Sean Toliver 246388
   plaintiff

United States District Court

FILED

Prisoner Civil Number:

2016 NOV 18 AM 10: 48

vs

Commissioner Semple
Commissioner Arnone
Deputy Commissioner Cepelak
Deputy Commissioner Dzurenda
Wardeb Maldonado,- Osborn
Warden Garner- Falcone
Fire Safety Officer Gero
Kevin Roy, Plant Facities Engineer II
Director Stephen Link
Rich Hardy- Head of Maintance
Marro Acosta
GMO- Goodwin
GMO Trap

Warden Chapdelaine
GMO Martin
GMO Sullivan

US DISTRICT COURT
BRIDGEPORT CT

GMO Bassette
GMO Bell

3:16cv1899(SRu)

<u>Complaint</u>

1.  This is a Civil Rights action filed by Sean Toliver(former Connecticut inmate) for Monetary damages under 42 U.S.C. section 1983.  Plaintiff has been subjected to inhumane and Hazardous conditions that posed unreasonable and substantial risk to his Health, while being incarcerated at Garner and Osborn C.I.  Correctional officers and medical staff have also filed lawuits in State and Federal Court against the State and Department of Corrections due to the conditions.

2.  Plaintiff maintains that the Defendants deprived and violated his contitional rights, and they carried out thier acts pursuant to customs and illegal practices.  And named defendants, acting under color of state law, knowingly caused plaintiff to be deprived of his contitutional rights.

3.  Plaintiff requests the court to declare the acts and/or omissions by defendants were unconstitutional and by an award of Compensatory and punitive damages compensate him for the violations of his constitutional rights and deter defendants from further participation in such unconstitutional acts and/or omissions.

page two

## Jurisdiction

4.  This action is brought to remedy the deprivation, under color of state law, of rights guaranteed by the 8th and 14th Amendments to the United States Constitution.  The court has jurisdiction over this action pursuant to 42 U.S.C. section 1983 and 28 U.S.C. section 1343(a)(3).

## Parties

5.  The plaintiff, Sean Toliver, inmate number 246388, can recieve all paperwork at 21 Beatrice Street, Bridgeport, Ct 06607               .
He is no longer in the custody of the Department of Corrections.

6.  The defendants Semple, Arnone, Cepelak,Dzurenda can all be served at 24 Wolcott Hill road, Wethersfield, Ct 06109

    Defendant's Maldonado, Gero, Roy, Hardy, Acosta, Goodwin, Trap, Martin, Sullivan, Bell and Bassette can all be served at 335 Bilton Road, Somers, Ct 06071, at Osborn C.I.

    Defendant Chapdelaine can be served at 1153 East Street South, Suffield, Ct 06080.

    Defendant Falcone can be served at 50 Nunnawauk Rd, Newtown, Ct 06470.

Defendandant Link can also be served at 24 Wolcott Hill Road, Wetherfield, Ct 06109.

All defendants are being sued in their individual and official capacities, money damages in individual capaties ONLY.

Warden Maldonado and Warden Falcone are the Wardens of each prison Osborn C.I. and Garner C.I. were the hazardous conditions where, that affected the plaintiff.  Each defendant knew about the harmful conditions in their respective prisons, and failed to act, did not notify the plaintiff of conditions and did not remove the plaintiff from the hazardous conditions.

Rich Hardy is the Head of Maintenance at Osborn C.I., he knew of the Hazardous conditions at Osborn C.I. and did not notify the plaintiff, nor report hazardous contitions, nor had plaintiff removed from the conditions.  Or take actions to remove conditions and/or change them.

GMO Goodwin also from Osborn C.I. was responsible for drilling holes in pipes in chassways for easy access for snaking, allowing harmful methphane gas to be released into the plaintiff's cell.

6.  Count(1) <u>Conditions at Osborn</u>

    The plaintiff was housed in Q-buildings from 10-18-11 Q1-20
until 8-2015 Q2-45, when he was moved into H-block single cell.

7.  On September 7, 2016 all inmates that were housed in Q2 were
moved to H-block, and he was made aware of the conditions of the
Q-s.

8.  Plaintiff was exposed to Asbestos(friable), methphane gas,
black and yellow mold, unsafe water, High levels of PCB(polychlor-
inated biphenyls) Poor Infrastructure of building, Fire Hazards-
No sprinklers, No fire drills, No auto unlock of all cells doors
and poor ventaliation system.

9.  A 12-19-11 memo from Rebecca Cutler Envirnomental Analyst II
to Ms. Culter states:  At your request on 11-14-2011, TRC performed
a PCB exterior caulk/glazing investigation in conjunction with
planned renovation of Osborn C.I.(Q-building) located in Somers,
Ct.  TRC methodology included conducting a visual site investigation
to identify and locate homogeneous caulk/glazing, along with collection
and analyses of representative caulk/glaze sample from PCB content..
34 samples in all were collected from 12 distinct Homogeneous mat-
erials identified.  Analysis revealed two materials types to contain
MORE than 50 parts per million(greater or equal to 50 ppm) total PCB,
six to contain more than one but less than 50(greater than 1 less
than 50 ppm) total PCB and 4 to contain less than one less than 1
ppm total PCM.  Thus several of the identified homogeneous caulk/

are either defined as PCB Bulk Product Waste(greater than 50ppm) under the EPA TSCA standards(40 CFR 761) or are regulated by the CTDEEP(greater than 1 less than 50 ppm) under the state PCB statutes (22a-463 through 469).

Based on this data, Further investigation for Potential PCB impacts to adjoining porous substrates(Brick, CMU, wood, etc) and/or soil/surface cover is WARRANTED, along with the Development of PCB remedial plans to facilitate the renovation project.

10.  On December 7, 2012 Commissioner Esty of the Department of Energy and Envirnomental Protection(DEEP) wrote in a 11-2011, TRC located at 21 Griffin Road in North Windsor, Ct was retained at the Osborn C.I. for the investigation of PCB(polychlorinated Biphenyls) in exterior and interior caulk/glazing....caulksamples 34 samples were taken and revealed 12 different types of caulk.  For the substrate and exterior caulk samples 129 samples were taken in total and of which 113 samples were taken from surfaces on the ground below and 16 from surfaces the caulk was adhered to.  The results of the testing are attached in report dated 12-19-11 from TRC.  This memo was CC: to Commissioner Arnone, Deputy Commissioners Cepelek and Dzurenda, Warden Chapdelaine, Director Link and Kevin Roy.

11.  Defendants were well advised of Dangerous conditions as early as 2011, and never notified plaintiff or other inmates.  And con- tinued to house inmates in Q's when was deemed unhabitable until 2016.  When Q's were finally closed down.

12.  On 10-20-2016 on Q1 North side, Clean Earth systems, Inc 1-800-Cubic-yd came in with bright yellow Demolition crew T-shirts full hooded white suits.  They took soil samples at different distances from building(between windows) NOT (under windows).

13.  On 10-28-2016, 2 workers came to Osborn to take more ground

samples of Q-building.

14.  Commissioner Semple, wrote a memo in 2016 thgt he would rather close the Q-s building due to the infrastructure of the building, but continued to house inmates in Q's although conditions were unsafe.

15.  Maintance Workers Trap, Acosta, Sullivan, Martin, Bassette and Bell were aware and made illegal drilled hoes in Chassways sewerage pipes, which releases methphane gas all day, but makes it easier for maintance crew to snake pipe when there is a clog.  It is totally against code to drill 1/2 to 1 inch holes in pipe for this easy access, it constantly smelled like sulfar/natural gas, which can cancer. And plaintiff had to smell the gas everyday.

16.  Fire Safety officer Gero never reported the illegal drilled holes, which could have cause a major explosion.  Nor did he report or do anything about holes or Osborn C.I.'s lack of sprinklers, lack of fire drills, lack of automatic door releases for emergency so inmates will not get stuck in cells(nothing in Q's).

17.  Kevin Roy at Osborn C.I. is Not certified Operator, but tests, monitors and reports drinking water results to Public Health.

18.  Kevin Roy has been deliquent and under violations on filing numerous reports on Chlorine, arsenic, Nitrate and calcuim.  And violations for Public Notifications(inmates)  I have never been informed when he was in violation.  Kevin Roy continues to sign off on Monitoring, testing and reporting as owner/operator for DOC to the Publis Health.  And Public Health continues to deal with him even though they know he is not certified to act.

19.  Drinking water is cloudy and brown, smells funny, tastes hor-rible, causes digestive issues,  Two inmates have contracted H-pylori. in 2016.

Count two (RAdon at Garner)

20.   The plaintiff was housed at Garner C.I. in 1998 to 2001 and 2006 to 2010.

21.   Through an August 29, 2016 Waterbury Republic American article the plaintiff became aware of Radon exposure at Garner C.I.

22.   The article revealed the prison was built in 1992 in an area of the state that the EPA considered to have the highest potential for Radon exposure.  Which was known before the building was built and precautions were not taken by the DOC to monitor levels and test until it was too late and several inmates and staff have died and have develped lung cancer.

23.   Plaintiff was inhaing radon for 7 years.

24.   Plaintiff was forced to reside at Osborn and Garner C.I., he has no right to be at any one prison.  He was forced to be housed in hazardous conditions that posed a substantial and ongoing risk to his physical and mental health

25.   While at Osborn C.I. plaintiff was also exposed to black and yellow mold and rust on shower heads.

26.   The plaintiff has suffered digestive and respiratory issues, skin infections and rashes, dehydration and risk of suffering from more serious ailments in the future poisoning, mesothlioma and lung cancer.

27.   This action is brought to end the pattern and practice of deliberate indifference to inhumane/hazardous conditions.  All defendants are those responsbile for overssing the institutions, but failed to ensure a safe envirnoment and remove plaintiff in a timely manner, fix conditions.  They were all aware of problemss.

Claims for Relief

     All defendants were aware of the hazardous conditions at Osborn C.I. and Garner C.I. and failed to fix conditions and keep a safe living area for the plaintiff.

A.  Compentary Damage in the amount of 1,000,00.00 against each and evey defendant in their individual capacity only

B.  Punitive Damage in the amount of 1,000,000.00 against each and every defendant in their individual capacity only.

C.  Nominal relief

D.  Attorney fees

E.  Plaintiff's cost to suit

F.  Jury Trial for all issues

G.  Any other relief this court deems just and equitable

Sean Toliver

21 Beatrice Street
Bridgeport, CT. 06607

**Connecticut Department of**
**ENERGY &**
**ENVIRONMENTAL**
**PROTECTION**

79 Elm Street • Hartford, CT 06106-5127          www.ct.gov/deep          Affirmative Action/Equal Opportunity Emplo

March 12, 2015

Osborn Correctional Institute
335 Bilton Road – Loft 1-64
Somers, CT 06071

Re: **Freedom of Information Act Request**

Dear

I am in receipt of your undated letter which the agency received March 10, 2015. With this letter, you also enclosed a copy of my September 17, 2012 acknowledgement letter relating to your Freedom of Information request which was dated August 4, 2011, and which the Department of Energy and Environmental Protection ("DEEP") received on September 11, 2012. The letter advised that there would be a possibility that the responsive documents might need to be reviewed for possible exemptions under Conn. Gen. Stat. §1-210(b)(19) and §1-210(b)(18).

At the time of your request, it was determined through an investigation with DOC that you did not meet the indigency standard as outlined in State of Connecticut, Department of Correction, Administrative Directive No. 3.10.and would, therefore, be liable for payment of responsive documents.

Subsequently, on October 17, 2012, I sent you a letter (copy enclosed) notifying you that after a search for responsive documents within the agency none were located and, therefore, there were no records to provide you. It was determined that DEEP was not involved with the activities related to the request and, consequently, was not in possession of any responsive documents. In an effort to try and obtain the documents you were seeking, the DEEP Remediation Division staff reached out to Timothy Carey, Environmental Analyst III in the Facilities Management & Engineering Division at DOC, as it was DOC that retained TRC in North Windsor, Connecticut to conduct an investigation for PCB's in the Bilton Road facility. Subsequently, on December 7, 2012, then Commissioner Esty received a letter from Mr. Carey (copy enclosed) providing a response to your inquiry along with the investigative report documents within DOC's possession. On December 20, 2012, I sent you a letter (copy enclosed) and forwarded you a copy of Mr. Carey's letter and the accompanying investigative reports which he had provided Commissioner Esty. DEEP did not charge you for these documents, nor was DEEP under any obligation to seek and provide you with responsive documents from another agency.

I hope this answers your inquiry.

Sincerely,

Mary Lou Kramer
Paralegal Specialist
Office of Legal Counsel
Office of the Commissioner

Enclosures



**ENERGY &**
**ENVIRONMENTAL**
**PROTECTION**

79 Elm Street • Hartford, CT 06106-5127          www.ct.gov/deep          Affirmative Action/Equal Opportunity Employer

October 17, 2012



Osborn Correctional Institute
335 Bilton Road
Somers, CT 06071

Re:  Freedom of Information Act Request   (F-12-128)

Dear ████:

   This is in response to your follow up letter dated September 21, 2012, regarding your Freedom of Information (FOI) Request the Department received on October 3, 2012.

   As I advised you in my initial FOI acknowledgement letter of September 17, 2012, I forwarded your FOI request to staff within pertinent areas of this agency to conduct a diligent search for responsive, non-exempt documents.  Had responsive documents been located showing the existence of a possible safety risk to the public, we would have been required by law to forward those records to another state agency for a safety risk assessment and determination of disclosure in accordance with Connecticut General Statutes §1-210(b)(19) and §1-210(b)(18).

   In the case of your FOI request, we followed our regular procedure, meaning the agency did a search for responsive records.  No responsive records to your FOI request were located, and thus, we have no records to share with you.

   Sincerely,

   Mary Lou Kramer
   Paralegal
   Office of Legal Counsel

Cc: Freedom of Information Commission



**STATE OF CONNECTICUT**
*DEPARTMENT OF CORRECTION*
**FACILITIES MANAGEMENT & ENGINEERING**
24 Wolcott Hill Road
Wethersfield, CT 06109

RECEIVED

DEC 1 ? 2012

DEPT. OF ENVIRON... TAL PROTECTION
OFFICE OF THE COMMISSIONER

Tim Carey
(860) 692-7897
FAX: (860) 692-7556

December 7, 2012

Commissioner Daniel C. Esty
Department of Energy and Environmental Protection (DEEP)
79 Elm Street
Hartford, CT 06106

RE: August 4th, 2012 - Osborn CI FOIA Request

Dear Mr. Esty,

In regards to the Freedom of Information Act request dated August 4th, 2012 is the response from the Department of Correction (DOC).

In November 2011, TRC (Located at 21 Griffin Road in North Windsor, CT 06095) was retained at the Osborn Correctional Institution (335 Bilton Road in Somers, CT 06071) for the investigation of PCB's (polychlorinated biphenyls) in exterior and interior caulk/glazing. As you know, Federal Regulations under 40 CFR Part 261 and CT State regulations (22a-463 through 469) requires these types of materials to be tested for PCB's prior to renovations, non-renovations, or demolition. PCB's are managed & regulated under the Toxic Substances Control Act (TSCA).

In terms of the caulk sampling, thirty-four samples were taken and revealed twelve different types of caulk. For the substrate and exterior caulk sampling, 129 samples were taken in total and of which 113 samples were taken from surfaces on the ground below and sixteen from surfaces the caulk was adhered to. The results of the testing are attached in the report dated December 19, 2011 from TRC.

Based on the levels of PCB's in caulk, EPA and DEEP require specific regulatory requirements based on if a renovation or non-renovation is going to take place. The CT DOC strictly follows the requirements set forth by the CT DEEP and EPA to ensure the safety and security of our facilities.



# STATE OF CONNECTICUT

## DEPARTMENT OF CORRECTION

**FACILITIES MANAGEMENT & ENGINEERING**
24 Wolcott Hill Road
Wethersfield, CT 06109

If you have any questions regarding this submittal, please contact me at (860) 692-7897.

Sincerely,

*Timothy Carey*

Timothy Carey
Environmental Analyst III

Attachments

CC:     Commissioner Arnone
        Deputy Commissioners Cepelak and Dzurenda
        Warden Chapdelaine
        Director Link
        Kevin Roy, Plant Facilities Engineer II
        Maurice Hamel, CT DEEP
        File

RECEIVED

DEC 17 2012

DEPT. OF ENVIRONMENTAL PROTECTION

*An Equal Opportunity Employer*



December 19, 2011

Ms. Rebecca A. Cutler
Environmental Analyst II
Connecticut Department of Construction Services
Technical Services
165 Capitol Avenue, Room 275
Hartford, CT  06106
rebecca.cutler@ct.gov

Subject:    Osborn Correctional Institution -- Q Building
            PCB Exterior Caulk Inspection
            DAS Contract # 08PSX0202
            TRC Project No. 188360
            DCS Project No. BI-JA-440
            PO# 10446

Dear Ms. Cutler:

At your request, on November 14, 2011, TRC performed a PCB exterior caulk/glazing investigation in conjunction with the planned renovations of the Osborn Correctional Institution (OCI) Q-Building located in Somers, Connecticut. TRC's methodology included conducting a visual site investigation to identify and locate homogeneous caulks/glazings, along with the collection and analyses of representative caulk/glaze samples for PCB content. Multiple grab samples of each identified homogeneous caulk/glaze were collected following a sampling strategy similar to the EPAs simplified sampling scheme for asbestos, and the samples were sent to a CTDPH accredited laboratory for PCB analysis via EPA Method 8082, with EPA Method 3540c, soxhlet extraction.

Thirty-four (34) samples in all were collected from twelve (12) distinct homogeneous materials identified. Analysis revealed two (2) material types to contain more than fifty parts per million ($\geq$50ppm) total PCB, six (6) to contain more than one but less than fifty (>1<50ppm) total PCB and four (4) to contain less than one (<1ppm) total PCB. Thus, several of the identified homogeneous caulks/glazes are either defined as PCB Bulk Product Waste ($\geq$50ppm) under the EPA TSCA standards (40 CFR 761) or are regulated by the CTDEEP (>1<50ppm) under the State PCB statutes (22a-463 through 469).

Based on this data, further investigation for potential PCB impacts to adjoining porous substrates (brick, CMU, wood, etc.) and/or soil/surface cover is warranted, along with the development of PCB remedial plans to facilitate the renovation project.

Refer to the attached table for details on the samples collected, analytical results and material classifications.

Ms Rebecca Cutler
December 19, 2011
Page 2

| Sample No. | Homogenous Material Type | General Location | Total PCB (ppm) | EPA/CTDEEP Regulated |
|---|---|---|---|---|
| 01 | LWC – Exterior Lower Wall Caulking | Exterior – N & S side Q1, Q2, Q3 & Q4 (at foundation level & above 1st floor concrete overhang) | 0.191 | No* |
| 02 | | | <0.113 | |
| 03 | | | 0.788 | |
| 04 | C2 – Exterior Silver/Grey Building Caulk | Exterior – N & S side Q1, Q2, Q3 & Q4 (around windows & at all expansion joints) | <0.268 | No |
| 05 | | | 0.602 | |
| 06 | | | 0.654 | |
| 07 | C3 – Exterior Silver/Grey Caulking @ L-ceiling joint | Exterior – N & S side Q1, Q2, Q3 & Q4 (at L-ceiling joint 1st & 2nd floors) | 3.16 | Yes – CTDEEP |
| 08 | | | 3.34 | |
| 09 | | | 2.44 | |
| 10 | WC1 – Interior Black Window Caulking on north side window | Interior – 1st & 2nd floor showers – Q1 & Q4 – north side window | <1.88 | Yes – CTDEEP |
| 11 | | | 0.540 | |
| 12 | WC2 – New pliable Exterior Light Grey Caulking on mulit-pane metal windows | Exterior – Kitchen | 4.99 | Yes – CTDEEP |
| 13 | | | 2.77 | |
| 14 | | | 2.03 | |
| 15 | WC3 – Old Exterior Window Caulking (under WC2) | Exterior – Kitchen | 8.41 | Yes – CTDEEP* |
| 16 | | | 4.71 | |
| 17 | | | 11.8 | |
| 18 | WC4 – Exterior Old Caulking around multi-pane red metal windows | Exterior – S side Q1/Q4, N side Q2/Q3 (main windows middle of the Q buildings) ~~(centrally located between wings)~~ — update | 6.0 | Yes – CTDEEP* |
| 19 | | | | |
| 20 | | | 39.1 | |
| 21 | EWG – Exterior Window Glazing on multi-pane red metal windows | Exterior – S side Q1/Q4, N side Q2/Q3 (main windows middle of the Q buildings | 0.705 | No* |
| 22 | | | 0.240 | |
| 23 | | | 0.336 | |
| 24 | WG1 – Multi-pane window glazing associated with Interior Shower Window | Interior – 1st & 2nd floor showers – Q1, Q2, Q3 & Q4 | 1.25 | Yes - CTDEEP |
| 25 | | | 1.16 | |
| 26 | | | 1.23 | |
| 27 | WG2 – Black Interior Window Glazing associated with North Side Window | Interior – 1st & 2nd floor showers – Q1 & Q4 | 0.713 | Yes – CTDEEP |
| 28 | | | 1.29 | |
| 29 | | | 3.93 | |
| 30 | WG3 – Black Window Glaze Putty on upper portion of North Side Window | Interior – 1st & 2nd floor showers – Q1 & Q4 | 10.6 | Yes – EPA |
| 31 | | | 71.9 | |
| 32 | WG4 – Exterior Window Glazing on multi-pane metal window | Exterior - Kitchen | 541 | Yes – EPA* |
| 33 | | | 495 | |
| 34 | | | 575 | |

ND< = Not-Detected, Less Than
PCB ≥ 50 ppm = EPA PCB Bulk Product Waste
PCB >1 ppm but <50 ppm = CTDEEP regulated
* Asbestos Containing Material

Silvering/g siliicone around wdws - sillicone - not sampld

① substrates seal in contact w/ each caulk

# TRC
## Bulk Caulk/Glaze Sample Log

substrate in contact with caulk

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1 | 01 | E WC lower wall caulk / North Q4 | y | y | y | NA | by 4377 | C/C |
| 1 | 04 | C2 / North Q4 | y | y | y | NA | 104=4378 | C/C |
| 1 | 07 | C3 / North Q4 | y | y | y | NX | 104-4381 | S/M |
| 2 | 02 | LWC / Q1-North | X | y | y | NA | No | C/C |
| 2 | 05 | C2 / North-Q1 | y | y | y | NA | 1 No | C/C |
| 1 | 18 | WC4 / North-below Q3+ | y | y | y | NA | 104-4383+4384 | C/M |
| 2 | 08 | C3 / Q1-North | y | y | y | NA | No | C/M |
| ③ | 03 | LWC / Q2 North (Tom) | y | y | y | NA | No | C/C |
| ③ | 09 | C3/ Q2-North | y | y | y | NA | No | C/M |
| ③ | 06 | G2 / Q2 - North | y | y | y | NA | No | C/C |
| 2 | 19 | WC4 / Q1/4 South | y | y | y | NA | No | C/M+c/c |
| ③ | 20 | WC4 / Q2/3 North | y | y | y | NA | No | C/M+c/c |

C = Concrete
M = metal

Inspector: _____GK/JG_____          Date: _11/14/11_

Ms Rebecca Cutler
December 19, 2011
Page 3

Enclosed please find the laboratory analysis data and field sketches/notes for the caulk/glaze sampling.

TRC greatly appreciates the continuing opportunity to provide environmental consulting services to the CTDCS. If you have any questions, please call me directly at (860) 298-6280.

Very Truly Yours,

TRC

Erik R. Plimpton, P.E., CHMM
Building Sciences Practice Leader

cc:      R. Topazio, TRC
         D. LePage, TRC
         R. Gille, TRC

Exterior Kitchen udaus have a grass cover beneath

## TRC
### Bulk Caulk/Glaze Sample Log



| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 21 | EWG | / Q2 North | X | Y | Y | NA | 104-4385 | M/G |
| 22 | | / Q1 S_h | X | Y | Y | NA | N | |
| 23 | | / Q3 North | X | Y | Y | NA | N | |
| 12-14 | WC2 | — Exterior Kitchen | X | Y | Y | Y | 104-4388 | C/B, C/M |
| | | (over WC3) | Y | Y | Y | X | 104-4391 | |
| | | | Y | Y | Y | Y | | |
| 32 | WG4 | — very delicate | Y | Y | Y | NA | | M/G |
| 33 | | | Y | Y | Y | NA | | |
| 34 | | | Y | Y | Y | NA | | |
| 15 | WC3 | (under WC2) | Y | Y | Y | Y | | C/B. C/M |
| 16 | | | Y | Y | Y | X | | |
| 17 | | | Y | Y | Y | Y | | |

Inspector: ___6K/J6___

Date: 11/14/11

M = metal
C = concrete
B = brick
G = glass

W61 + Q2 shower 1st flr 2 2th fl - no caulk & W/dow glaze is beaded up on both . Q1 south Cell 4 - no caulk [ Interio Kitchen has no glaze or caulk ]
③
O3 showers - are same as Q2 / Q4 " Cell 30 - of sample from outside
3rd flr has a lot of glaze / Q2 - North " 33 "

**TRC**
**Bulk Caulk/Glaze Sample Log**

| | | | | | | | | Substrate in contact w/ caulk glaze |
|---|---|---|---|---|---|---|---|---|
| 1 | 27 | W62 | /Q1 2nd flr shwr | Y | Y | Y | Y | 104-4392 | M/G |
| 1 | | W63 south | /Q2 2nd fl | Y | Y | Y | Y | - 4393 | M/G |
| 1 | 10 + 11 | WC1 | /Q1 3rd flr shwr | Y | Y | Y | NA | 4394 | M/C |
| 1 | 24 | W61 | /Q1 2nd flr shwr | Y | Y | Y | NA | 4395 | M/G |
| ④ | 28 + 29 | W62 | /Q4 2nd flr shwr | Y | Y | Y | Y | N | |
| ④ | 30 + 31 | WC3 | | Y | Y | Y | Y | N | |
| ④ | | WC1 | | Y | Y | Y | NA | N | |
| ④ | 25 + 26 | WG1 | | Y | Y | Y | NA | N | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

Photos 4396 + 4397 are shower wdws

M = Metal
G = glass
C = Concrete

Inspector: GK/JG

Date: 11/14/1



Connecticut Department of

**ENERGY &**
**ENVIRONMENTAL**
**PROTECTION**

---

79 Elm Street • Hartford, CT 06106-5127          www.ct.gov/deep          Affirmative Action/Equal Opportunity Employer

December 20, 2012

▬▬▬▬▬▬▬
Osborn Correctional Institute
335 Bilton Road  Q4-10B
Somers, CT 06071

Re:  Freedom of Information Act Request  (F-12-128)

Dear ▬▬▬▬

    You may recall that my correspondence to you dated October 17, 2012 advised you that no responsive records to your FOI request were located, and thus, we had no records to share with you.  Please be advised that on December 17, 2012, this agency received a letter from Timothy Carey, Environmental Analyst III at the State of Connecticut Department of Correction, Facilities Management & Engineering Division.  I believe that this letter contains information that is responsive to your FOI request and, as a result, I am enclosing a copy herewith.

    Thank you.

Sincerely,

Mary Lou Kramer
Paralegal
Office of Legal Counsel

Cc: Timothy Carey, DOC
    Maurice Hamel, CT DEEP
    Freedom of Information Commission



August 22, 2012

Ms. Rebecca A. Cutler
Environmental Analyst II
Connecticut Department of Construction Services
Technical Services
165 Capitol Avenue, Room 275
Hartford, CT  06106
rebecca.cutler@ct.gov

Subject:    Osborn Correctional Institution – Q Building
             PCB Porous Substrate/Surface Cover Inspection
             DAS Contract # 08PSX0202
             TRC Project No. 188360
             DCS Project No. BI-JA-440
             PO# 10446

Dear Ms. Cutler:

At your request, on June 22, 28 & 29 and July 13, 2012, TRC performed porous substrate and exterior surface cover sampling for PCB containing caulk/glazing in conjunction with the planned renovations of the Osborn Correctional Institution (OCI) Q-Building located in Somers, Connecticut.

Porous substrate building material samples were collected at the point of contact between the porous material substrate and regulated PCB containing caulk.  Samples were collected following the CTDCS Standard Operating Procedures Prepping of Porous Substrates for Sampling PCB's at each of the locations.

Exterior surface cover materials were collected directly beneath horizontal and vertical applications of PCB caulk and paint according to 40 CFR Part 761 Subpart N modified to meet the needs of this sampling program.  Specifically, surface cover samples were collected a distance of 1 foot from the base of the building, or bulk PCB containing material, at 10 foot intervals (for horizontal applications) and beneath vertical applications.  All soil samples were collected as grab samples of a soil interval not to exceed 3" in depth.  All asphalt and concrete surface cover samples were collected following the EPA Region 1 Standard Operating Procedure for Sampling Porous Surfaces for Polychlorinated Biphenyls (PCB's)

All samples were sent to a CTDPH accredited laboratory for PCB analysis via EPA Method 8082, with EPA Method 3540c, soxhlet extraction.

One hundred & twenty-nine (129) samples in all were collected: sixteen (16) from porous substrate materials and one hundred & thirteen (113) from exterior surface cover materials. Analysis revealed one (1) porous substrate sample to contain more than 1 part per million (>1ppm) total PCB's and five (5) exterior surface cover samples to contain >1ppm total PCB's.  Thus, some of the identified porous substrate and exterior surface cover materials are either defined as PCB Remediation Waste under the EPA TSCA standards (40 CFR 761) or are regulated by the CTDEEP (>1<50ppm) under



# STATE OF CONNECTICUT
## DEPARTMENT OF PUBLIC HEALTH

Jewel Mullen, M.D., M.P.H., M.P.A.
Commissioner

Dannel P. Malloy
Governor
Nancy Wyman
Lt. Governor

May 2, 2014

Mr. Kevin D. Roy
Dept of Corrections
175 Bilton Road
Somers, CT  06071

| | |
|---|---|
| PUBLIC WATER SYSTEM: | **Connecticut Correctional Institute** |
| | Enfield, CT |
| CLASSIFICATION TYPE: | Community |
| PWSID: | CT0490031 |

SUBJECT:   **NOTICE OF VIOLATION – MONITORING AND REPORTING**

Dear Mr. Roy:

Enclosed is a Notice of Violation ("NOV") that is being issued to Connecticut Correctional Institute for failure to comply with the Regulations of Connecticut State Agencies. Since Connecticut Correctional Institute failed to comply with the monitoring requirements cited in Section I during the periods specified, public notification shall be provided to its customers in accordance with Section II of this NOV. The enclosed Public Notification and Certification of Compliance templates may be utilized to fulfill the notification requirements. The public notification requirements outlined in Section II can be avoided by submitting the missing water quality test results cited in Section I.

**PLEASE NOTE THAT FAILURE TO COMPLY WITH MONITORING REQUIREMENTS OVER THE NEXT TWELVE MONTHS WILL RESULT IN THE IMPOSITION OF A CIVIL PENALTY THAT WILL ACCRUE DAILY IF THE CIVIL PENALTY IS NOT PAID BY THE DATE CITED IN THE NOTICE OF VIOLATION WITH CIVIL PENALTY.**

If you have any questions, please contact Sara Rossetti at (860) 509-7333 or at the letterhead address. Please refer to PWSID CT0490031 in all communication with the Department.

Sincerely,

*Gary Johnson*

Gary Johnson
Supervising Environmental Analyst
Drinking Water Section

cc:   Mr. Chris Iwanik, Certified Operator
      Mr. Victor N. Nigro, Jr., Certified Operator



Phone: (860) 509-7333 • Fax: (860) 509-7359 • VP: (860) 899-1611
410 Capitol Avenue, MS#51WAT, P.O. Box 340308
Hartford, Connecticut  06134-0308
www.ct.gov/dph
*Affirmative Action/Equal Opportunity Employer*

# STATE OF CONNECTICUT

## DEPARTMENT OF PUBLIC HEALTH



Jewel Mullen, M.D., M.P.H., M.P.A.
Commissioner

Dannel P. Malloy
Governor
Nancy Wyman
Lt. Governor

## NOTICE OF VIOLATION

Connecticut Correctional Institute, PWS ID: CT0490031, located in Enfield ("Respondent") is required, in accordance with Sections 19-13-B102(e)(7), 19-13-B102(e)(11) and 19-13-B102(h) of the Regulations of Connecticut State Agencies ("RCSA"), to monitor and report test results for the following requirements.

Section I.  Non-compliance.

A.     Respondent was required to submit **Chlorine** test results by November 9, 2013, for the period **October 1, 2013 to October 31, 2013** for Water System Facility ID: 00600 (Distribution System). Respondent failed to submit these results.

B.     Respondent was required to submit **Chlorine** test results by December 9, 2013, for the period **November 1, 2013 to November 30, 2013** for Water System Facility ID: 00600 (Distribution System). Respondent failed to submit these results.

Section II.  Public Notification.

Respondent shall provide public notification ("Notice") to its customers for the violations indicated in this Notice of Violation as required under Section 19-13-B102(i) of the RCSA. *Respondent shall distribute Notice by mail or other direct delivery to each customer receiving a bill and to other service connections to which water is delivered by the Respondent; and publication in a local newspaper or newsletter.* Customers of the Respondent should be asked to notify all tenants of the violations.  If said Notice is posted, it shall remain in place for as long as the violations persist, but in no case for less than seven (7) days.

In addition, Respondent shall submit to the Department, no later than ten (10) days after completing the Notice requirements, a Certification of Compliance for each Notice that Respondent has provided to its consumers, certifying that it has fully complied with the requirements of Section 19-13-B102(i) of the RCSA.  Respondent shall include with the Certification(s) a representative copy of each Notice that was distributed, published, posted, and made available to the persons served by the system and to the media.

Respondent shall provide Notice to its customers according to the following schedule.  Failure to comply with all Notice requirements may result in the imposition of civil penalties.

A.     Respondent shall provide Notice to its customers for the violation cited in Section I.A on or before **May 2, 2015**.

B.     Respondent shall provide Notice to its customers for the violation cited in Section I.B on or before **May 2, 2015**.



Phone: (860) 509-7333 • Fax: (860) 509-7359 • VP: (860) 899-1611
410 Capitol Avenue, MS#51WAT, P.O. Box 340308
Hartford, Connecticut  06134-0308
www.ct.gov/dph
*Affirmative Action/Equal Opportunity Employer*

Connecticut Department
of Public Health

**PUB** **LIFICATION**

Important **In formation** About Your Drinking Water

## MONITORING AND REPORTING VIOLATION

*Este informe contiene información importante acerca de su agua potable. Haga que alguien lo traduzca para usted, o hable con alguien que lo entienda.*

Date: _____3/9/2015_____

PWSID: _____CT0490031_____

To:    The Customers/Residents of    ____Connecticut Correctional Institute____

From: _____

Our public water system recently violated drinking water monitoring and reporting requirements. As a supplier of public drinking water, we are required to monitor the water quality of our water supply to insure that it meets the current drinking water standards. Failure to conduct monitoring and/or report results of such monitoring to the State Department of Public Health Drinking Water Section constitutes a violation. Although this incident was not an emergency, as our customers, you have a right to know what happened and what we did to correct this situation.

We are required to monitor your drinking water for specific contaminants on a regular basis. Results of regular monitoring are an indicator of whether or not our drinking water meets health standards. We **did not monitor or test or did not complete all of the monitoring or testing** for the requirement(s) listed below and therefore cannot be sure of the quality of our drinking water during that time.

Chlorine (WSF ID: 00600; Monitoring Period: October 1, 2013 - October 31, 2013)

Chlorine (WSF ID: 00600; Monitoring Period: November 1, 2013 - November 30, 2013)

**What is being done?**

The following areas have been affected:

Enfield/Somers Correctional Complex

The following steps are being taken to correct this violation:

Ensure all effluent and monitoring report forms are sent in at the beginning of the month and confirm DPH has received.

We expect to return to compliance or resolve the situation by    3/9/2015

(date)

If you have any questions please contact ____Kevin Roy____ at ____860-253-3642____ or

(owner, operator or designee)                                      (phone #)

by mail at _____175 Bilton Road_____ , ____Somers____ , __CT__ , ____06071____

(Street)                                      (Town)      (State)      (Zip Code)

Please share this information with all the other people who drink this water, especially those who may not have received this notice directly (for example, people in apartments, nursing homes, schools, and businesses). You can do this by posting this notice in a public place or distributing copies by hand or mail.

# CERTIFICATION OF COMPLIANCE

## PUBLIC NOTIFICATION

Public Water System Name:   Connecticut Correctional Institute

Public Water System Town:   Enfield

Public Water System ID:   CT0490031

Monitoring and Reporting Violation(s):

Chlorine (WSF ID: 00600; Monitoring Period: October 1, 2013 - October 31, 2013)
Chlorine (WSF ID: 00600; Monitoring Period: November 1, 2013 - November 30, 2013)
Chlorine (WSF ID: 00600; Monitoring Period September 1, 2013 –September 30, 2013)
Chlorine (WFS ID: 00600; Monitoring Period: July 1, 2014 -  July 31, 2014)

The public water system indicated above hereby affirms that public notice has been provided to consumers in accordance with the delivery, content, and format requirements of Section 19-13-B102(i) of the Regulations of Connecticut State Agencies.

❑   Consultation with Department of Public Health (if required)   on _____

❑   Notice distributed by _____   on _____

❑   Notice published in _____   on _____
                              (newspaper or newsletter)

❑   Notice published in Consumer Confidence Report on _____

_____
Signature of owner or operator

_____
Date



August 22, 2012

Ms. Rebecca A. Cutler
Environmental Analyst II
Connecticut Department of Construction Services
Technical Services
165 Capitol Avenue, Room 275
Hartford, CT  06106
rebecca.cutler@ct.gov

Subject:    Osborn Correctional Institution – Q Building
            PCB Porous Substrate/Surface Cover Inspection
            DAS Contract # 08PSX0202
            TRC Project No. 188360
            DCS Project No. BI-JA-440
            PO# 10446

Dear Ms. Cutler:

At your request, on June 22, 28 & 29 and July 13, 2012, TRC performed porous substrate and exterior surface cover sampling for PCB containing caulk/glazing in conjunction with the planned renovations of the Osborn Correctional Institution (OCI) Q-Building located in Somers, Connecticut.

Porous substrate building material samples were collected at the point of contact between the porous material substrate and regulated PCB containing caulk.  Samples were collected following the CTDCS Standard Operating Procedures Prepping of Porous Substrates for Sampling PCB's at each of the locations.

Exterior surface cover materials were collected directly beneath horizontal and vertical applications of PCB caulk and paint according to 40 CFR Part 761 Subpart N modified to meet the needs of this sampling program.  Specifically, surface cover samples were collected a distance of 1 foot from the base of the building, or bulk PCB containing material, at 10 foot intervals (for horizontal applications) and beneath vertical applications.  All soil samples were collected as grab samples of a soil interval not to exceed 3" in depth.  All asphalt and concrete surface cover samples were collected following the EPA Region 1 Standard Operating Procedure for Sampling Porous Surfaces for Polychlorinated Biphenyls (PCB's)

All samples were sent to a CTDPH accredited laboratory for PCB analysis via EPA Method 8082, with EPA Method 3540c, soxhlet extraction.

One hundred & twenty-nine (129) samples in all were collected: sixteen (16) from porous substrate materials and one hundred & thirteen (113) from exterior surface cover materials. Analysis revealed one (1) porous substrate sample to contain more than 1 part per million (>1ppm) total PCB's and five (5) exterior surface cover samples to contain >1ppm total PCB's. Thus, some of the identified porous substrate and exterior surface cover materials are either defined as PCB Remediation Waste under the EPA TSCA standards (40 CFR 761) or are regulated by the CTDEEP (>1<50ppm) under

# STATE OF CONNECTICUT
## DEPARTMENT OF PUBLIC HEALTH



Jewel Mullen, M.D., M.P.H., M.P.A.
Commissioner

Dannel P. Malloy
Governor
Nancy Wyman
Lt. Governor

Environmental Health Section
Radon Program

January 27, 2014

Richard Pease
Department of Correction (DOC)
24 Wolcott Hill Road
Wethersfield, CT 06109

Dear Mr. Pease:

The Department of Public Health Radon Program has performed radon in air testing at the Garner Correctional Institution (GCI) at 50 Nunnawauk Road in Newtown, CT. Specifically, the Radon Program conducted initial testing for radon in air from December 11-17, 2013 and follow-up/confirmatory testing from January 13-16, 2014.

A letter was distributed to all GCI staff on December 3, 2013 for notification purposes of the radon testing event (See Attachment A). Air testing was conducted in all frequently occupied school rooms under "closed building conditions", during the weekday period of the colder months of the year, with the building occupied, and the heating, ventilation, and air-conditioning (HVAC) systems operating normally. Testing was conducted using AirChek, 3-7 day, activated, charcoal tests manufactured by AirChek, Inc. These tests contain no metal parts and are designed to resemble an envelope that includes a small amount of activated charcoal and a small rectangular piece of porous foam in the inner envelope and a small plastic hook attached to the outer envelope. Testing included the use of blank (Rm IDs 2001B-2005B &1001B-1004B), duplicate (Associated room ID followed by a -1D or -2D), and spiked (Room IDs 1001S-1004S) tests as part of the Quality Assurance/Quality Control (QA/QC) plan and conducted in accordance with the United States Environmental Protection Agency (EPA) and State of Connecticut Department of Public Health (DPH) protocols. No QA/QC issues were identified that required further investigation. Test placement and retrieval was completed by DPH staff, Allison Sullivan and Lynn Hudak, who were approved by the DOC Security Division and authorized to visit the DOC facilities (see Attachment B). All radon tests were analyzed by AirChek, Inc. of Mills River, North Carolina and the QA/QC spiked samples were exposed for 3 days in a radon chamber at Bowser-Morner, Inc. of Dayton, Ohio. All radon test reports can be found in Attachment C of the report.



Phone: (860) 509-8000 • Fax: (860) 509-7184 • VP: (860) 899-1611
410 Capitol Avenue, P.O. Box 340308
Hartford, Connecticut 06134-0308
www.ct.gov/dph
*Affirmative Action/Equal Opportunity Employer*



**Garner Correction Institution**
**Deputy Warden Denise Dilworth**
**Connecticut Department of Correction**

TO:       Roll Call
FROM:   Deputy Warden Denise Dilworth
DATE:    May 2, 2014
RE:       Draft Design for Garner
●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●

The Director of Facilities Management and Engineering, Stephen Link, has received the draft
remediation design for Garner and they are reviewing it and corresponding with the consultant with
comments/questions.
At this time it is not ready to use for bidding however they are working as fast as possible to bring it to
that point. They should be able to achieve this next week. The process once they have an acceptable
design is:

- Choose a contractor and based on the design and walk-through get an estimate/bid
- Send an emergency project request with design and estimate to DCS for approval
- Once they receive approval a PO can be issued to the contractor

They will expedite all phases as much as possible while making sure we get a good product/project.




c:    Warden Henry Falcone
      Deputy Warden Hein
      All Captains/Counselor Supervisors/Lieutenants/Unit Managers/Department Heads

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3rd Shift | | | | | | | |
| 1st Shift | | | | | | | |
| 2nd Shift | | | | | | | |

Radon concentrations at and above 4.0 pCi/L were found in some locations at GCI during the initial testing in December, 2013. Follow-up testing was conducted at GCI to confirm these elevated radon levels in January, 2014. Out of 117 test locations at this facility, 58 test locations had radon levels at or above the EPA Action Level of 4.0 pCi/L at which mitigation is recommended. Radon mitigation by a qualified Radon Mitigation Professional is recommended for the locations listed in the following table.

| Test Location | Initial Radon Results Over 4.0 pCi/L | Follow-up Radon Results (pCi/L) | Average of Highest Initial and Highest Follow-up (pCi/L) |
|---|---|---|---|
| 277 Lower Main Control | 5 | 5.4 | 5.2 |
| 277 Upper Main Control | 4.6 | 5.6 | 5.1 |
| 701 Chapel | 9.3 | 4.8/5.2 | 7.3 |
| 706B | 6.3 | 5.9 | 6.1 |
| 707 Chapel Foyer | 7.5 | 4.8 | 6.2 |
| 708B | 7.1 | 4.5 | 5.8 |
| 806 Classroom 3 | 4.7 | 4.7 | 4.7 |
| 807 Classroom 2 | 4 | 4.4 | 4.2 |
| 812B | 4.8/3.6 | 3.9 | 4.4 |
| 829B | 6.4 | 4.5 | 5.5 |
| 830A | 4.2 | 4.3 | 4.3 |
| 834 | 4.8 | 3.8 | 4.3 |
| 835 | 4.7 | 3.8 | 4.3 |
| 838 | 4.6 | 3.7 | 4.2 |
| 839 | 3.5/5.5 | 4.8 | 5.2 |
| 840 | 5.5 | 4.2 | 4.9 |
| 842 | 6.2 | 4.2/4.1 | 5.2 |
| 843 | 4.5 | 3.4 | 4 |
| 844 | 5.2 | 4.2 | 4.7 |
| 847A | 5.3 | 3.9 | 4.6 |
| 849 | 4.4 | 4.3 | 4.4 |
| 850 | 5.1 | 5.1 | 5.1 |
| 853A | 4.9 | 3.9 | 4.4 |
| 860 Gym Office | 5.5 | 4 | 4.8 |
| Gym-WD Front | 5 | 4.9 | 5 |
| Gym-WC | 5.5 | 6.4 | 6 |
| Gym-WD Back | 5.8 | 5.4 | 5.6 |
| 104 Administration | 11.1 | 9.5/9.8 | 10.5 |
| 107A | 7.0/7.0 | 8.5 | 7.8 |
| 108 Rec | 8.3 | 8.6 | 8.5 |
| 109 Rec | 7.9 | 8.7 | 8.3 |

| | | | |
|---|---|---|---|
| 115 Visitor Station | 8.1 | 9.3 | 8.7 |
| 117A Rec-Rear | 6.9 | 7.3 | 7.1 |
| 119A Conference Room | 7.7 | 9.1 | 8.4 |
| 120 Lounge | 8.4 | 10.1 | 9.3 |
| 124 Rec | 7.8 | 6.9 | 7.4 |
| 128A Work Room | 8.1 | 8 | 8.1 |
| 156A Weight Room | 8.9 | 8.6 | 8.8 |
| 163 Phone Room | 8.5 | 7.9 | 8.2 |
| 165 | 7.8/8.3 | 8.2 | 8.3 |
| 176 | 9.8 | 11.5 | 10.7 |
| 306 Medical | 20.6 | 18.8/18.9 | 19.8 |
| 308 Medical | 15.8 | 16.8 | 16.3 |
| 313 Laboratory | 18.7 | 19.3 | 19 |
| 314 Pharmacy | 22.1 | 18.3 | 20.2 |
| 316 Medical | 17.3 | 17.2 | 17.3 |
| 317 Medical | 17.7 | 18.8 | 18.3 |
| 318 Medical | 21.9 | 19.1 | 21 |
| 322 Medical | 17.4 | 16.3 | 16.9 |
| 325 Medical | 15.9 | 15.9 | 15.9 |
| 326 Medical | 13.6 | 15.7 | 14.7 |
| 327 Medical | 21.1 | 20 | 20.6 |
| 328 Medical | 19.5 | 15.7 | 17.6 |
| 330 Dental | 23.8 | 19.3/20.3 | 22.1 |
| 331 Medical | 23.7 | 21.5 | 22.6 |
| 333 Medical | 21.9/20.9 | 21.4 | 21.7 |
| 334 Medical | 18 | 17 | 17.5 |
| Records Area-WA | 7.2 | 9.8 | 8.5 |
| Records Area-WC | 6.7 | 8.6 | 7.7 |

The most up-to-date list of Radon Mitigation Professionals can be found at the following address: www.ct.gov/dph/radon. A hard copy of the list only considered up-to-date as of the date of this report is provided in Attachment D.

It is also recommended that the following rooms be considered for mitigation because even though the average was not at or above 4.0 pCi/L, either the initial or follow-up result was at near 4.0 pCi/L. These locations include: C136, D120 Mental Health, D136 Nurse, and F136 Nurse.

In summary, at least 58 locations in the facility should be addressed in the radon mitigation plan designed by a qualified radon mitigation contractor not including the 10 school rooms that were previously identified as having radon levels at or above 4.0 pCi/L. Therefore, a total of 68 locations were found to have elevated levels of radon in air. Once reduced, these rooms should

# Did You Know?



*"Did You Know" is an informational column aimed at increasing your knowledge of issues in our everyday lives. This article was compiled by Public Information Officer Andrius Banevicius. Any questions related to this article may be answered by contacting him at 860-692-7780. If you have any questions, or have an idea for a future column, please leave a message at 860-692-7780.*

# Radon Mitigation

Recently, as a result of some routine mandated testing within our correctional facilities, the Garner Correctional Institution was found to have increased levels of radon. This discovery prompted our agency to partner with the Department of Public Health (DPH) to formulate an action plan.

Before delving into the details of the plan, it might help to know a little bit about radon. Anyone who has purchased a home since 1984 has probably had a radon test done during the buying process.

Radon is an odorless, invisible, radioactive gas that is found in varying amounts in the earth. Radon is found in all 50 states and about 1 out of 15 homes in the U.S. have high levels of radon. Prolonged exposure to high levels of the gas has been linked to lung cancer.



How radon enters a house

Radon can enter indoor air environments through structural spaces, cracks and pores in the floors and walls. Radon is the heaviest known gas, nine times heavier than air – this is why the highest concentrations of radon are typically found in a building's basement. Current Environmental Protection Agency guidelines suggest that action be taken if the radon level in any occupied part of a building reaches or exceeds 4 pCi/L. Radon is measured in picocuries per liter of air (pCi/L). To understand the relative amounts you may be exposed to, the average indoor level is 1.3 pCi/L, and about 0.4 pCi/L is normally found in the outside air.

The DPH has determined that the levels of radon found at Garner CI do not require evacuation; instead they recommended that a mitigation system be installed. The system typically involves the installation of a venting system that draws the radon gas from the ground beneath the building, and exhausts it above the roofline where it is quickly diluted.

A design consultant and licensed contractors have been secured and the remediation process is in motion. Locations that previously tested for elevated levels of radon will be re-tested after the mitigation system is installed to ensure the system is reducing radon levels as intended.

The Department is committed to keeping its employees informed as we move forward with collaboration between the Garner administration, Engineering, Human Resources, DPH and union officials. If you have any questions or concerns surrounding this process, a complete report of the radon test results is available for review in the Administrative Office (room 104) of the Garner Correctional Institution. You also have the ability to complete a WC207 package. The following link to the DPH website provides additional information about radon: http://www.ct.gov/dph/cwp/view.asp?a=3140&q=387592&dphNav_GID=1828&dphPNavCtr=|#47072

be tested to ensure that the mitigation system is effective and then re-evaluated every 2.5 years to ensure the mitigation system is working properly as an important part of system maintenance.

If you have any questions or concerns, do not hesitate to contact me to discuss any aspect of the radon testing activities. I am happy the Radon Program was able to assist you in the radon testing efforts to promote a healthy environment for GCI residents and staff.

Sincerely,

Allison Perry Sullivan
Environmental Analyst 3
Radon Program

# Radon Remediated

## The installation of a radon remediation system at Garner CI has been completed

The Department of Correction's Facilities Management and Engineering Unit is pleased to announce that the radon remediation project at the Garner Correctional Institution was completed on October 3, 2014. The construction and installation of the six radon systems was performed by A & R Environmental LLC.

The need for the mitigation systems was discovered earlier this year when, after the completion of federally mandated radon testing of schools throughout the department, radon levels above the action level of 4 picocurie/liter were found at Garner CI. Current Environmental Protection Agency guidelines suggest that action be taken if the radon level in any occupied part of a building reaches or exceeds 4 pCi/L. Radon is measured in picocuries per liter of air (pCi/L). To better understand the relative amounts a person may be exposed to, the average indoor level is 1.3 pCi/L, and about 0.4 pCi/L is normally found in the outside air.

Testing was repeated including the entire facility and levels above the action level were discovered. As a result of the testing, the Department of Correction (DoC) in conjunction with the Department of Public Health (DPH) initiated an emergency radon remediation project. An environmental consultant was hired to evaluate the situation and develop an action plan. Two licensed radon remediation contractors with experience in large facility remediation were invited to design and bid on a system to lower the radon levels. The system designs were evaluated by an environmental consultant along with staff members from the DoC's Facilities Management and Engineering Unit. They settled on a design consisting of six Active Soil Depressurization System units.



**One of the six Active Soil Depressurization units installed at the Garner Correctional Institution.**

Elevated radon levels are primarily due to the infiltration of soil gas entering a building through cracks in the concrete slab or exposed soil. The flow of soil gas into a building is usually being driven by a slight negative pressure above the slab that draws soil gas into the building. Most radon mitigation systems use Active Soil Depressurization (ASD) to reverse the normal flow of soil gas. A fan and piping is used to draw air out from under the concrete slab(s) or from under a membrane. The withdrawal of air causes the sub-slab or sub-membrane area to be a lower pressure than the air in the building. This lower or negative pressure prevents the soil gas from entering the building. The radon gas vents to the outdoor air above the facility where it quickly dilutes into the atmosphere.

Installation of the system began on September 8, 2014, and was completed on October 10, 2014, at a cost of $60,000. Post testing has indicated all the systems are working as designed and are achieving radon levels below the 4 picocurie/liter action level. Further testing will be done in the winter to verify that the system is working properly.

The following link to the DPH website provides additional information about radon:

http://www.ct.gov/dph/cwp/view.asp?a=3140&q=387592&dphNav_GID=1828&dphPNavCtr=|#47072