UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| SEAN TOLIVER,<br>    Plaintiff, | :<br>:<br>: |  |
| v. | :<br>: | CASE NO. 3:16-cv-1899 (SRU) |
| COMMISSIONER SEMPLE, et al.,<br>    Defendants. | :<br>:<br>:<br>: |  |

INITIAL REVIEW ORDER

Sean Toliver, a former inmate, filed this case *pro se* under 42 U.S.C. § 1983 alleging that the defendants exposed him to unconstitutional conditions of confinement while he was confined at Osborn and Garner Correctional Institutions. Toliver names as defendants Commissioner Semple, Commissioner Arnone, Deputy Commissioner Cepelak, Deputy Commissioner Dzurenda, Warden Madonaldo, Warden Falcone, Fire Safety Officer Gero, Plant Facilities Engineer II Kevin Roy, Director Stephen Link, Head of Maintenance Rich Hardy, Marro Acosta, GMO Goodwin, GMO Trapp, Warden Chapdelaine, GMO Martin, GMO Sullivan, GMO Bassette and GMO Bell. The complaint was filed on November 18, 2016. Toliver's motion to proceed *in forma pauperis* was granted on November 22, 2016.

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not

required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

I.   Allegations

   A.   Osborn Correctional Institution

Toliver was housed in Q-building at Osborn Correctional Institution ("Osborn") from October 18, 2011 through August 2015, when he was moved to a single cell in H-block. On September 7, 2016, all inmates housed in Q2 were moved to H-block. At that time, Toliver became aware of the conditions of confinement in Q-building. Toliver alleges that he was exposed to friable asbestos, methane gas[1], black and yellow mold, unsafe water, high levels of polychlorinated biphenyl ("PCB") contamination, poor building infrastructure, and fire hazards including no sprinklers, no fire drills, no automatic unlocking mechanism for cell doors and poor ventilation.

---

[1] Toliver's complaint uses the term "methphane," which I am interpreting to mean "methane" because I do not believe methphane is a type of gas.

Toliver attaches to his complaint a memo to Rebecca Cutler, dated December 19, 2011, which reported on PCB testing of exterior caulk and glazing at Q-building. In December the Department of Energy and Environment reported that a company had been retained to test interior and exterior caulk for PCBs. Defendants Arnone, Cepelak, Dzurenda, Chapdelaine and Roy were copied on the memo. In October 2016, workers wearing full-hooded suits took soil samples at Osborn. Also in 2016, Commissioner Semple indicated that he would prefer to close Q-building because of infrastructure issues but continued to house inmates there.

Maintenance worker defendants Trap, Acosta, Sullivan, Martin, Bassette and Bell drilled holes in sewage pipes to facilitate clog removal. The holes, which were against code requirements, released methane gas all day. Fire Safety Officer Gero failed to report the holes or any of the other fire hazards. Defendant Roy signed testing and monitoring reports on water quality even though he was not certified to do so. Toliver describes the drinking water at Osborn as cloudy and brown with a "funny" smell and bad taste. He alleges that two inmates contracted H-pylori from the water in 2016. Shower heads had rust as well as black and yellow mold.

      B.      <u>Garner Correctional Institution</u>

Toliver was confined at Garner Correctional Institution ("Garner") from 1998 to 2001 and again from 2006 through 2010. In 2016, Toliver learned from a newspaper article that Garner was located in an area with the highest potential for Radon exposure in the state. Toliver alleges that he was forced to inhale radon for seven years and that several inmates and staff members developed lung cancer from radon exposure.

Toliver alleges that he has suffered digestive and respiratory issues, skin infections and rashes, dehydration and possible exposure to more serious ailments.

3

II.     Analysis

Toliver contends that the defendants subjected him to unconstitutional conditions of confinement.  To state an Eighth Amendment claim for unconstitutional conditions of confinement, an inmate must allege facts demonstrating failure of prison officials to provide for the inmate's "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety."  *DeShaney v. Winnebago Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989).

An inmate may prevail on an Eighth Amendment claim based on unconstitutional conditions of confinement "only where he proves both an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the official acted, or omitted to act with a 'sufficiently culpable state of mind,' meaning with a 'deliberate indifference to inmate health or safety.'"  *Phelps v. Kapnolas*, 308 F.3d 180, 185 (3d Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994)).  A condition is objectively serious if it "'pose[s] an unreasonable risk of serious damage to [a prisoner's] future health.'"  *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).   Thus, the "objective component relates to the seriousness of the injury."  *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994).  To meet the subjective component, a plaintiff must allege that prison officials knew "of and disregard[ed] an excessive risk to inmate health or safety," that is, that they were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and … dr[e]w that inference."  *Phelps*, 308 F.3d at 185-86.  An inmate may state an Eighth Amendment claim based on allegations that prison officials, with deliberate indifference, exposed him to an unsafe condition that poses an unreasonable risk of serious harm to his future health. *Helling v. McKinney*, 509 U.S. 25, 34-35 (1993).

      A.    <u>Osborn Correctional Institution</u>

Toliver alleges that the conditions in Q-building at Osborn, including high PCB levels; exposure to friable asbestos, methane gas and black and yellow mold; unsafe water; poor building infrastructure; and fire hazards rise to the level of a constitutional violation. He alleges that Commissioner Semple acknowledged some of these conditions but permitted inmates to remain in Q-building. He also alleges that other defendants were aware of or created these conditions. Toliver alleges that he suffered digestive and respiratory issues, but other inmates contracted H-pylori from the water. Toliver need not wait until he suffers serious harm to challenge dangerous conditions of confinement. *See Helling*, 509 U.S. at 33 ("We would think that a prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery."). For that reason, I conclude that the alleged conditions are sufficient to support a plausible claim for unconstitutional conditions of confinement.

      B.    <u>Garner Correctional Institution</u>

Toliver contends that the exposure to radon constitutes an unconstitutional condition of confinement. Although he may state an Eighth Amendment claim for exposure to unsafe conditions that pose an unreasonable risk of harm to future health, *Helling*, 509 U.S. at 34-35, Toliver presents evidence that the defendants took immediate remedial action. Toliver has attached to his complaint documents noting that radon testing was done at Garner in December 2013 and January 2014. Following receipt of the recommendations, the Department of Correction contracted for mitigation work, which was completed by June 2014. *See* ECF No. 1 at 26-32. As the defendants acted promptly when informed of the problem, they were not

5

deliberately indifferent.  The claim regarding Garner is dismissed.

      C.      Declaratory Relief

Toliver has sued the defendants in their individual and official capacities.  He states that he seeks damages from the defendants in their individual capacities only.  ECF No. 1 at 2.  The remaining relief sought is a declaration that the defendants' actions or omissions were unconstitutional.  ECF No. 1 at 1.

Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of that right or a disturbance of the relationship."  *Colabella v. American Institute of Certified Public Accountants*, 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 28, 2011) (citations omitted).  Declaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages.  *See In re Combustion Equip. Assoc., Inc.*, 838 F.3d 35, 37 (2d Cir. 1988).

Toliver's request for declaratory relief concerns only past actions.  He has not identified any legal relationships or issues that require resolution by declaratory relief.  Thus, the request for declaratory relief is dismissed.  *See Ward v. Thomas*, 207 F.3d 114, 119-20 (2d Cir. 2000) (holding that Eleventh Amendment bars declaration that State of Connecticut violated federal law in the past); *Camofi Master LDC v. College P'ship, Inc.*, 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006 )(concluding that claim for declaratory relief that is duplicative of adjudicative claim underlying action serves no purpose).

III.      Conclusion

The claim for radon exposure at Garner and the request for declaratory relief are **dismissed** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The Clerk is directed to terminate

defendant Falcone, the warden at Garner, as a defendant in this case.  The case will proceed on the claim for unconstitutional conditions of confinement at Osborn against the remaining defendants in their individual capacities.

It is hereby ordered that:

(1) **The Clerk shall** verify the current work addresses for each remaining defendant with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint to each defendant at the confirmed address within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him or her and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** send written notice to the plaintiff of the status of this action, along with a copy of this Order.

(3) **The Clerk shall** send a courtesy copy of the Complaint and this Ruling and Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be

completed within **seven months (210 days)** from the date of this order.  Discovery requests need not be filed with the court.

      (6)      All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

      (7)      Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

      (8)      If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court.  Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is, or becomes, incarcerated.  The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

      **SO ORDERED** this 6th day of December 2016 at Bridgeport, Connecticut.

      /s/STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge