UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SEAN TOLIVER, et al.,                  :
                                       :
              Plaintiffs,              :        LEAD CONSOLIDATED
                                       :        CASE NO.
              v.                       :
                                       :        3:16-cv-1899-SRU
SCOTT SEMPLE, et al.,                  :
                                       :
              Defendants.              :
                                       :

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
## CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

David P. Friedman (ct# 03558)
Lorey Rives Leddy (ct# 19297)
MURTHA CULLINA LLP
177 Broad Street, 16th Floor
Stamford, CT 06901
Tel: (203) 653-5400
Fax: (203) 653-5444
dfriedman@murthalaw.com
lleddy@murthalaw.com
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND .............................................................................. 3

    A.    PCBs and Friable Asbestos in the Q Buildings ...................................... 3

    B.    Contaminated Water ................................................................................ 6

III.  ARGUMENT ....................................................................................................... 8

    A.    Applicable Legal Standards .................................................................... 8

    B.    Certification under Fed. R. Civ. P. 23(a) .............................................. 10

        1.    Numerosity................................................................................. 10

        2.    Commonality............................................................................... 11

        3.    Typicality ................................................................................... 13

        4.    Adequacy .................................................................................... 14

    C.    Certification under Fed. R. Civ. P. 23(b) .............................................. 16

        1.    Rule 23(b)(1)............................................................................. 16

        2.    Rule 23(b)(2)............................................................................. 18

        3.    Rule 23(b)(3)............................................................................. 20

    D.    Appointment of Class Counsel .............................................................. 23

IV.   CONCLUSION................................................................................................... 24

# TABLE OF AUTHORITIES

Page(s)

Allen v. Cuomo, 100 F.3d 253 (2d Cir. 1996) ............................................................ 10

Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997) ............................... 14, 16, 20

Austen v. Catterton Partners V, LP, 268 F.R.D. 146 (D. Conn. 2010) .......................... 9

Barnes Group, Inc. v. Int'l Union United Auto. Aerospace & Agric.
    Implement Workers of Am., 2017 WL 1407638 (D. Conn. Apr. 19, 2017) ............................ 16

Brown v. Kelly, 609 F.3d 467 (2d Cir. 2010) .................................................................. 9

Cashman v. Dolce Int'l/Hartford, Inc., 225 F.R.D. 73 (D. Conn. 2004) ....................... 9

Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco
    Managed Care, LLC, 504 F.3d 229 (2d Cir.2007) ................................................. 10

Clarkson v. Coughlin, 145 F.R.D. 339 (S.D.N.Y. 1993) ............................................... 9

Coley v. Clinton, 635 F.2d 1364 (8th Cir. 1980) ........................................................... 9

Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473 (2d Cir. 1995) ....................... 11

Dean v. Coughlin, 107 F.R.D. 331 (S.D.N.Y. 1985) .................................................... 10

Easterling v. Connecticut, Dep't of Correction, 265 F.R.D. 45 (D. Conn. 2010) .................... 9, 12

Elkind v. Revlon Consumer Prod. Corp., 2017 WL 9480894 (E.D.N.Y. Mar. 9, 2017) ............. 19

Eng v. Smith, 849 F.2d 80 (2d Cir. 1988) ..................................................................... 10

Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147 (1982) .................................................. 13

Haddock v. Nationwide Fin. Servs., Inc., 262 F.R.D. 97 (D. Conn. 2009) .................. 14

Haddock v. Nationwide Fin. Servs., Inc., 293 F.R.D. 272 (D. Conn. 2013) ................ 20

Hassine v. Jeffes, 846 F.2d 169 (3d Cir. 1988) .............................................................. 9

Held v. AAA of Southern New England, 2012 WL 4023367 (D. Conn. Sept. 12, 2012) ............. 8

Hilton v. Wright, 235 F.R.D. 40 (N.D.N.Y. 2006) ......................................... 16, 17, 18

In re American Int'l Group, Inc. Sec. Litig., 689 F.3d 229 (2012) ............................... 20

Ingles v. City of New York, 2003 WL 402565 (S.D.N.Y. Feb. 20, 2003) .................... 16

Jones v. Smith, 784 F.2d 149 (2d Cir. 1986) .................................................................. 9

Kaye v. Amicus Mediation & Arbitration Group, Inc., 300 F.R.D. 67 (D. Conn. 2014) ........... 10

Kennedy v. Esper, 2018 WL 6727353 (D. Conn. Dec. 21, 2018) ................................ 18

Lemire v. Wolpoff & Abramson, LLP, 256 F.R.D. 321 (D. Conn. 2009) .................... 17

Lemire v. Wolpoff & Abramson, LLP, 2009 WL 10689105 (D. Conn. Dec. 8, 2009) ............... 23

Marisol A. v. Giuliani, 126 F.3d 372 (2d Cir. 1997) .......................................................... 9, 12, 13

Matyasovszky v. Hous. Auth., 226 F.R.D. 35 (D. Conn. 2005) ................................................ 9, 12

Mazzanti v. Gen. Elec. Co., 2017 WL 923905 (D. Conn. Mar. 7, 2017) ..................................... 19

McBean v. City of New York, 260 F.R.D. 120 (S.D.N.Y. 2009)..................................................... 8

Morrison v. Ocean State Jobbers, Inc., 290 F.R.D. 347 (D. Conn. 2013) .................................... 12

Noble v. 93 Univ. Place Corp., 224 F.R.D. 330 (S.D.N.Y.2004) .................................................. 10

Ouellette v. Int'l Paper Co., 86 F.R.D. 476 (D. Vt.1980) ............................................................ 14

Perkins v. S. New England Tel. Co., 669 F. Supp. 2d 212 (D. Conn. 2009)................................. 13

Richards v. FleetBoston Fin. Corp., 235 F.R.D. 165 (D. Conn. 2006)......................................... 14

Roach v. T.L. Cannon Corp., 778 F.3d 401 (2d Cir. 2015) ......................................................... 20

Robidoux v. Celani, 987 F.2d 931 (2d Cir.1993) .................................................................. 10, 13

Shelter Realty Corp. v. Allied Maint. Corp., 574 F.2d 656 (2d Cir. 1978) .................................... 9

Spencer v. No Parking Today, Inc., 2013 WL 1040052 (S.D.N.Y. Mar. 15, 2013).................... 23

State of Connecticut Office of Prot. & Advocacy for Persons
  with Disabilities v. Connecticut, 706 F. Supp. 2d 266 (D. Conn. 2010) .................................. 12

Steginsky v. Xcelera, Inc., 2015 WL 1036985 (D. Conn. Mar. 10, 2015) .............................. 9, 13

Sykes v. Mel Harris & Assocs., LLC, 780 F.3d 70 (2d Cir. 2015)........................................ 20, 22

Tiro v. Public House Investments, LLC, 288 F.R.D. 272 (S.D.N.Y.2012) ................................... 20

Vincent v. Money Store, 304 F.R.D. 446 (S.D.N.Y. 2015)................................................... 15, 22

Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011).................................................... 12, 18, 19

## I.    INTRODUCTION

Consolidated Plaintiffs ("Plaintiffs"), by and through their undersigned counsel, hereby respectfully submit this Memorandum of Law in Support of their Motion for Class Certification and Appointment of Class Counsel, pursuant to Rule 23(a), 23(b)(1), (2) and (3), and  23(g) of the Federal Rules of Civil Procedure.

Plaintiffs are nineteen (19) current and former inmates who have asserted two counts in the Second Amended Consolidated Complaint ("Complaint"), seeking redress under state and federal law for the unconstitutional conditions of confinement suffered by each of them while incarcerated at Osborn Correctional Institution ("Osborn").  More particularly, Plaintiffs contend they were and/or continue to be subjected to hazardous conditions while confined at Osborn, conditions that were and remain well-known to the named Defendants, who Plaintiffs allege have exhibited deliberate indifference to the substantial risk of harm to each of the Plaintiffs.

Most of the Plaintiffs were housed in a group of cell blocks at Osborn referred to as the "Q Buildings," where inmates, including Plaintiffs, were knowingly and intentionally exposed for long periods of time to PCBs and friable asbestos, both known carcinogens.  Comp., ¶¶ 2, 40-65.  Plaintiffs also contend that inmates have been forced to drink and bathe in contaminated tap water, which has caused many of them to suffer digestive and skin-related ailments and, in many cases, to be diagnosed with infection with Heliobactor Pylori ("H. pylori") bacteria.  Id., at ¶¶ 66-78.

This Court consolidated these nineteen actions on the grounds that the claims in each relate to chronic exposure to the same toxins and hazardous conditions at Osborn, each alleges that the named Defendants were deliberately indifferent to their health and safety, and each seeks essentially the same equitable and monetary relief.  Plaintiffs now bring this motion for class

**ORAL ARGUMENT REQUESTED**
**TESTIMONY NOT REQUIRED**

certification on behalf of all of those inmates similarly situated in order to further focus and facilitate the adjudication of their claims for relief.

Based on the facts as alleged in the Complaint, Plaintiffs initially propose that the Court certify one class and one subclass of current, former and future inmates, based upon the nature of the conditions suffered by members of each group.  The first class proposed by Plaintiffs consists of all current and former inmates confined at Osborn, from on or about November 18, 2013 (three years prior to filing of the complaint in the lead action),[1] who have been compelled to drink contaminated water, which class (the "Water Class") is likely to include thousands of current, former and potentially future inmates who have passed through Osborn during the class period and who will be housed at Osborn going forward.  As set forth below, members of the Water Class principally seek the same injunctive and monetary relief.[2]

The proposed sub-class consists of those inmates who were specifically housed in the Q Buildings ("Q Buildings Class"), also between November 2013 and the date of closure of the buildings at the end of 2016, and who were exposed for extensive periods of time, against their will, to PCBs and friable asbestos.  Again, the Q Buildings Class is likely to consist of hundreds of current and former inmates, but this class should be readily and easily defined, and does not consist of any future members since the Q Buildings have been closed.  Again, the members of the Q Buildings Class principally seek the same injunctive and monetary relief.

---

[1] Because the first complaint in these consolidated actions was filed by Sean Toliver on November 18, 2016, and in consideration of applicable statutes of limitations, Plaintiffs propose a class of current and former inmates incarcerated at Osborn from November 19, 2013 to the present, as set forth below, as to the condition of the water, and from November 19, 2013 through November 2016 for the subclass of inmates housed in the Q Buildings, since the Q Buildings were closed at that time.

[2] As set forth below, for purposes of Rule 23(b), and if the Court deems necessary, the proposed Water Class can be separated even further between an injunction class under Rule 23(b)(2), and a monetary damages class under Rule 23(b)(3).

Plaintiffs have demonstrated, through their separate, individually-filed complaints, the First Amended Consolidated Complaint and exhibits thereto, the Complaint, and all other pleadings and papers filed in this action, that class certification is appropriate. Particularly in cases involving conditions of confinement in prisons, courts routinely grant class certification in matters such as this to allow efficient use of judicial resources to address the uniform mistreatment of potentially thousands of individuals who have been subjected to conditions that violate their constitutional rights. In this case, certification is appropriate to redress the conditions at Osborn on behalf of thousands of former, current and future inmates, and to provide relief for those inmates who were housed in the Q Buildings and exposed to potentially deadly toxins.

The alternative to class certification would result in wasting the resources of the Court and the parties, and requiring a far greater degree of active management by this Court, potentially leading to inconsistent decisions. Indeed, the Court has already seen fit to consolidate the claims of the nineteen named Plaintiffs, reflecting the fact that addressing the claims collectively makes more sense. In addition, given the lack of resources available to Plaintiffs, it is likely that many would never have an opportunity to have their claims presented. Thus, the only reasonable means by which to proceed is on a class basis.

## II.    FACTUAL BACKGROUND

### A.    PCBs and Friable Asbestos in the Q Buildings

As alleged in the Complaint, Plaintiffs seek to represent a class of all current and former inmates of Osborn who, without any choice, were housed and confined in the Q Buildings from November 19, 2013 through the closing of the Q Buildings in late- 2016, and who were exposed to friable asbestos and PCBs.

As documented in a substantial body of research and case law, regular and sustained exposure to PCBs (a group of man-made organic chemicals that are known human carcinogens banned in the United States from production in 1979), poses a significant and serious risk to health, with many long-term illnesses, including cancer, not manifesting until years after exposure. Comp., ¶ 41. Documents produced in this action by TRC Environmental Corp. reflect that testing was done at Osborn in 2011 and 2012 in connection with proposed renovations of the Q Buildings. The testing showed excessive levels of PCBs were discovered in window glazing and plumbing caulking throughout the Q Buildings, which is believed to have seeped into soil and asphalt outside of the Q Buildings, which also tested positive for PCBs. Id., at ¶¶ 42-46; *see also* Exhibits 1 and 2 to the First Amended Consolidated Complaint (ECF Docs. 88-1 and 88-2). Internal communications about the results of the testing have not yet been produced by the Department of Corrections, but ultimately, the decision was made to close the Q Buildings rather than renovate them. The Q Buildings were finally closed by the end of 2016. Comp., ¶¶ 48-49.

Nevertheless, despite the fact that some or all of the named Defendants had actual knowledge of the existence of PCBs in the Q Buildings as far back as 2011 and 2012, inmates continued to be housed in the Q Buildings until late-2016, during which time they were continuously exposed to a known carcinogen. Id., at ¶ 51. Plaintiffs have alleged that confining inmates in housing units where PCBs were known to exist, a condition that was not remediated for several years after discovery, constitutes a violation of the inmates' constitutional rights.[3] Id., at ¶¶ 51-52; Counts I and II. Indeed, at least one of the named Plaintiffs, a former inmate of

---

[3] Records produced by the Department of Corrections appear to indicate that only the Q Buildings at Osborn were included in the environmental testing. Id., at ¶ 44. Although for purposes of this Motion for Class Certification, Plaintiffs have limited the Q Buildings Class to those current and former inmates who were housed in the Q Buildings, Plaintiffs reserve the right to expand the class to include inmates housed in other blocks at Osborn in the event that PCBs are discovered elsewhere in the facility.

Osborn who was housed in the Q Buildings for an extensive period of time, has tested positive for PCB exposure and is currently being monitored by an infectious disease specialist. Id., at ¶ 9.

In addition, and also as reflected in a substantial body of research and case law, regular and sustained exposure to friable asbestos, a known human carcinogen, poses a significant and serious risk to health in humans, with many long-term illnesses, including cancer, not manifesting until years after such exposure. Id., at ¶ 55. Also during testing between 2009 and 2011 by TRC Environmental Corp., which produced records in this action in compliance with a subpoena *duces tecum*, friable asbestos was discovered and identified in various locations in Osborn, but particularly in the Q Buildings. Id., at ¶¶ 56-58. Despite the fact that some or all of the named Defendants had actual knowledge of the existence of friable asbestos in the Q Buildings, inmates were nevertheless confined in the Q Buildings for lengthy periods of time between November 19, 2013 and late-2016, when the Q Buildings were permanently closed. Id., at ¶ 64. Plaintiffs have alleged that compelling inmates to remain in housing units where friable asbestos was known to exist, and which was not remediated for several years after its discovery and after the closure of the Q Buildings, constitutes a violation of the inmates' constitutional rights. Id., at Counts I and II.

The Q Buildings Class would consist only of those current and former inmates of Osborn who, after November 19, 2013, were confined in the Q Buildings. Plaintiffs, on behalf of the Q Buildings Class, seek injunctive relief, including (a) immediate baseline testing for all class members to determine the impact of exposure to friable asbestos and/or PCBs; (b) the provision of periodic medical monitoring, for a period of years to be determined at trial, based upon the known, long-term risk of developing latent illnesses as a result of exposure to friable asbestos and/or PCBs; and (c) the provision of medical treatment for any Subclass member suffering

from, or who develops, symptoms or conditions associated with such exposure. The named Plaintiffs, on behalf of the Q Buildings Class, also seek an award of monetary damages against the named Defendants who knowingly and intentionally, or with blatant disregard for known risks, compelled inmates to remain confined in the Q Buildings after the discovery of the presence of highly elevated levels of friable asbestos and PCBs, in violation of their constitutional rights.

### B.     <u>Contaminated Water</u>

Plaintiffs also seek to represent a class of all current and former inmates of Osborn who have been forced to drink and shower in tap water that has been described as brown and opaque with an offensive odor and taste. Plaintiffs believe the water has been contaminated by the seeping of raw sewage and fecal matter into the water supply as a direct result of the conduct of some of the named Defendants, resulting in significant digestive and intestinal ailments of said current and former inmates, including infection by H. pylori bacteria, as well as skin rashes and conditions, which may be caused by other chemical contaminants in the well water. <u>Id.</u>, at ¶¶ 58; 64.

Documents produced by the Department of Corrections indicate that, although the water at Osborn (which is piped into the facility from three wells onsite), is regularly tested for contaminants, including bacteria such as E. Coli and coliform, it does not appear that the water is tested or treated for the presence of H. pylori, even though some or all of the named Defendants have been aware for many years that inmates are testing positive for H. pylori while at Osborn. <u>Id.</u>, at ¶ 73. The documents confirm consistently high levels of arsenic in the water, although the levels are regularly just fractional increments below restrictions and regulations imposed by the United States Environmental Protection Agency ("EPA") and the Connecticut Department of

Energy and Environmental Protection ("DEEP"). Id., at ¶ 75. The documents also reflect that, although the water is regularly tested for bacteria such as E. Coli and coliform, no testing for the H. pylori bacteria is conducted, even though numerous inmates have been diagnosed with H. pylori bacterial infections. Id., at ¶ 73.

The Water Class would consist of all current and former inmates of Osborn, whether or not housed in the Q Buildings, from November 19, 2013 through the present, because all such inmates have been forced to drink and shower in what Plaintiffs have alleged is contaminated tap water. Plaintiffs, on behalf of the Water Class, seek injunctive relief, including (a) immediate access to bottled drinking water for all inmates; (b) immediate identification and implementation of remedial measures at Osborn to correct the condition of the tap water utilized by inmates for drinking and showering, including the elimination of H. pylori and other bacteria which may be the cause of digestive issues suffered by inmates, and the elimination of excessive chlorine-related chemicals and arsenic that is known to be in the water and which may be the cause of skin-related conditions after lengthy exposure; (c) immediate medical testing of class members to determine all potential risks associated with drinking and showering in the contaminated water at Osborn, including testing of those inmates complaining of digestive issues for possible infection by H. pylori bacteria; and (d) the provision of ongoing medical treatment for any class member suffering from or who develops symptoms or conditions associated with such exposure.

Plaintiffs, on behalf of the Water Class, also seek an award of monetary damages against the named Defendants who knowingly and intentionally, or with blatant disregard for known risks, engaged in conduct leading to the contamination of drinking and bathing water utilized by inmates at Osborn, or who knew of the presence of certain contaminates in the water, and who

nevertheless forced inmates at Osborn to drink and shower in the contaminated water, in violation of their constitutional rights.

Both the Water Class and the Q Buildings Class seek the above-referenced relief based upon allegations of substantial wrongful conduct by the state, and by its officers named as Defendants herein in their official and individual capacities (a) who promoted an illegal and unconstitutional purpose in excess of the officers' statutory authority, (b) who violated the constitutional rights of the subject Class members with respect to conditions of confinement that exposed prisoners to high levels of known carcinogens and to bacteria-filled water, with reckless and intentional indifference to the known risks of such exposure, and (c) who, in the case of the Q Buildings, failed to affirmatively take steps to remove the Class members from the unsafe conditions once the toxins were discovered.

## III.  ARGUMENT

### A.  Applicable Legal Standards

"In order to succeed on a motion for class certification, the plaintiff must prove that the proposed class meets all of the requirements set forth in Rule 23." Held v. AAA of Southern New England, No. 3:11CV105 SRU, 2012 WL 4023367, at *1 (D. Conn. Sept. 12, 2012). Plaintiffs must meet a two-step analysis under Rule 23.  First, Plaintiffs must satisfy the four requirements of Rule 23(a), namely, numerosity, commonality, typicality and adequacy.  Fed. R. Civ. P. 23(a)(1)-(4).[4]  "In order to be certified as a class action, a class must not only meet all

---

[4] The Court may also consider, under Rule 23(a), the additional requirement of ascertainability, which is met when the class is "readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling." McBean v. City of New York, 260 F.R.D. 120, 132–33 (S.D.N.Y. 2009).  Here, assuming the Department of Corrections has maintained adequate records regarding the housing of inmates at Osborn since 2013, and in particular, the housing of inmates in the Q Buildings, the members of the proposed classes and subclass should be readily ascertainable.

Rule 23(a) requirements, but it must also qualify under one of the three Rule 23(b) subdivisions."

Easterling v. Connecticut, Dep't of Correction, 265 F.R.D. 45, 52 (D. Conn. 2010), *modified*, 278

F.R.D. 41 (D. Conn. 2011); *see also* Brown v. Kelly, 609 F.3d 467, 476 (2d Cir. 2010);

Steginsky v. Xcelera, Inc., No. 3:12-CV-188 SRU, 2015 WL 1036985, at *3 (D. Conn. Mar. 10,

2015), *aff'd,* 658 F. App'x 5 (2d Cir. 2016). In this case, Plaintiffs request class certification

under all three – Rule 23(b)(1), (2) and (3).

When determining whether the requirements of Rule 23 have been met, "[t]he Second

Circuit has instructed district courts that Rule 23 is to be given a liberal rather than a restrictive

interpretation." Austen v. Catterton Partners V, LP, 268 F.R.D. 146, 148 (D. Conn. 2010)

(*quoting* Cashman v. Dolce Int'l/Hartford, Inc., 225 F.R.D. 73, 90 (D. Conn. 2004)); *see also*

Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997) (same). Additionally, in deciding a

motion for class certification, "courts should consider the allegations in the complaint as true."

Matyasovszky v. Hous. Auth., 226 F.R.D. 35, 39 (D. Conn. 2005) (*citing* Shelter Realty Corp. v.

Allied Maint. Corp., 574 F.2d 656, 661 n.15 (2d Cir. 1978)).

Class certification is especially appropriate in a case like this, in which Plaintiffs seek

remedies based upon the unconstitutional and hazardous conditions in which they have been

imprisoned in violation of their civil rights, conditions which are the result of deliberate

indifference by the named Defendants, and of policies and practices that are applicable to all

proposed class members. Hassine v. Jeffes, 846 F.2d 169, 180 (3d Cir. 1988) (stating that class

certification "is an especially appropriate vehicle for actions seeking prison reform") (*citing*

Coley v. Clinton, 635 F.2d 1364, 1378 (8th Cir. 1980)). Indeed, class actions "tend to be the

norm" in prison condition cases. Clarkson v. Coughlin, 145 F.R.D. 339, 346 (S.D.N.Y. 1993)

(*citing* Jones v. Smith, 784 F.2d 149, 151 (2d Cir. 1986) (suggesting the appropriateness of class

actions in challenges to prison rules)); <u>Dean v. Coughlin</u>, 107 F.R.D. 331, 332 (S.D.N.Y. 1985) (noting that class actions are well-suited for actions brought by prisoners because of the "fluid composition" of the prison population); *see also* <u>Allen v. Cuomo</u>, 100 F.3d 253 (2d Cir. 1996); <u>Eng v. Smith</u>, 849 F.2d 80 (2d Cir. 1988).

A class action is a superior means, and the only practicable means, by which Plaintiffs and yet-to-be-determined members of the Water Class and Q Buildings Class can pursue claims that their exposure to PCBs, friable asbestos, and unsafe drinking water, subjected them to conditions of confinement in violation of their rights under the Constitutions of the United States and the State of Connecticut. Accordingly, as set forth more fully below, this action should be certified as a Class Action pursuant to Rule 23(a)(1)-(4) and Rule 23(b) of the Federal Rules of Civil Procedure.

### B. <u>Certification under Fed. R. Civ. P. 23(a)</u>

#### 1. <u>Numerosity</u>

The numerosity requirement is directed to the practicality of joinder of a large number of parties in one or more actions. "The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible – only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." <u>Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC</u>, 504 F.3d 229, 244–45 (2d Cir.2007). "[E]vidence of exact class size or identity of class members" is not required, and the court may rely on reasonable inferences drawn from available facts." <u>Kaye v. Amicus Mediation & Arbitration Group, Inc.</u>, 300 F.R.D. 67, 78 (D. Conn. 2014) (*quoting* <u>Robidoux v. Celani</u>, 987 F.2d 931, 935 (2d Cir.1993), and <u>Noble v. 93 Univ. Place Corp.</u>, 224 F.R.D. 330, 338 (S.D.N.Y.2004)).

Generally speaking, "numerosity is presumed at a level of 40 members." Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).

In this case, numerosity is easily demonstrated. The members of both the Water Class and the Q Buildings Class are so numerous that joinder of their claims is impracticable. Such is the case here. The current capacity for Osborn is approximately 1,900 inmates, although the capacity in 2016, before the closure of the Q Buildings, was higher. Publicly-available data and statistics issued by the Connecticut Department of Corrections indicate that, since the closing of the Q Buildings, the population of Osborn has consisted of approximately 1,400 inmates, although these figures increase and decrease regularly with inmate additions and releases.[5] A press release issued by Governor Dannel P. Malloy on December 6, 2016, announcing the closure of the Q Buildings, indicates that the Q Buildings had housed up to 400 inmates at a time.[6]

With respect to the Q Buildings Class members, potentially hundreds of inmates were housed and exposed to unsafe levels of PCBs and asbestos between November 2013 and the closure of the Q Buildings in late-2016. With respect to the Water Class members who have been forced to drink the tap water that has been described as unsanitary and the cause of significant digestive problems, the entire prison population at Osborn has been impacted. The Water Class is likely to include thousands of members who were confined at Osborn during the relevant period of time. Given the large number of potential class members, Plaintiffs meet the requisite standard for numerosity.

---

[5] *See* Connecticut Department of Corrections, "Average Confined Inmate Population," available at: https://portal.ct.gov/-/media/DOC/Pdf/MonthlyStat/Stat201901.pdf?la=en.

[6] *See* https://portal.ct.gov/Malloy-Archive/Press-Room/Press-Releases/2016/12-2016/Gov-Malloy-Announces-Four-Units-at-Correctional-Institution-in-Somers-to-Close.

## 2.    **Commonality**

"The commonality requirement is met if plaintiffs' grievances share a common question of law or fact." Marisol A., 126 F.3d at 376. "Plaintiffs need not establish that all questions of law and fact among the putative class are identical." Matyasovsky, 226 F.R.D. at 41. Instead, a plaintiff must only show that class members "suffered the same injury" and "their claims ... depend upon a common contention." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). "[F]or purposes of Rule 23(a)(2), [e]ven a single [common] question will do." Id., at 359 (internal quotation marks omitted).

Under Dukes, the Court must consider whether "class members 'have suffered the same injury'" and whether their claims "depend upon a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 564 U.S. at 349-350; *see also* Morrison v. Ocean State Jobbers, Inc., 290 F.R.D. 347, 354 (D. Conn. 2013) (finding commonality where "plaintiffs … identified a common contention capable of classwide resolution … central to the validity of [their] claim"). Where the question of law involves "standardized conduct of the defendant toward members of the proposed class the commonality requirement of Rule 23(a)(2) is usually met." Easterling, 265 F.R.D. at 52. "Minor factual differences will not preclude class certification if there is a common question of law." State of Connecticut Office of Prot. & Advocacy for Persons with Disabilities v. Connecticut, 706 F. Supp. 2d 266, 287 (D. Conn. 2010).

Here, the Court has already consolidated nineteen separate actions by the named Plaintiffs, presumably taking into consideration the common allegations and legal issues raised against the same (or nearly the same) defendants in each of the underlying complaints. The

questions of law and fact, and the relief sought by each class member, are common enough as to all members that a class action is particularly appropriate. Specifically, the conditions of confinement will be virtually identical as to each member of the Water Class, and each member of the Q Buildings Class, such that determination of the truth or falsity of key issues of fact will resolve issues that are central to the validity of each one of the claims in one stroke. Further, on the issue of liability, whether the named Defendants had knowledge of the unconstitutional conditions of confinement and nevertheless demonstrated deliberate indifference to the safety of the inmates also presents a common factual and legal question between each of the members. The ultimate legal question of whether such conduct violates the class members' Eighth Amendment rights under the United States Constitution also is a common question applicable to each member.

### 3. **Typicality**

"Typicality ... requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Marisol A., 126 F.3d at 376; *see also* Robidoux, 987 F.2d at 936; Perkins v. S. New England Tel. Co., 669 F. Supp. 2d 212, 223 (D. Conn. 2009). "The typicality requirement assures that 'the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" Steginsky, *supra*, 2015 WL 1036985, at *4 (*quoting* Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 158 (1982).

Again, in this case, Plaintiffs' claims are essentially identical to the claims that may be asserted by each member of the proposed classes since the respective sets of claims arise out of the same facts and circumstances, and the theories of liability of the named Defendants will be

consistent among each of the class members.  Likewise, for the most part, the injunctive and monetary relief sought with respect to both the Water Class and the Q Buildings Class will be the same or similar for each member.  Several of the named Plaintiffs have developed medical conditions believed to be associated with water that is unsafe for drinking and bathing which conditions are likely to be typical of the class members.[7]  In short, based on the circumstances giving rise to the claims asserted by the Plaintiffs, their claims are typical of the claims that may be asserted by other class members.

### 4. **Adequacy**

"Rule 23(a)(4) requires that 'the representative parties will fairly and adequately protect the interests of the class.' This generally requires plaintiffs to make a two-part showing:  first, that the lead plaintiffs' interests are not 'antagonistic' to the other members' interests, and second, that the plaintiffs' attorneys are 'qualified, experienced and able to conduct the litigation.'" Haddock v. Nationwide Fin. Servs., Inc., 262 F.R.D. 97, 117 (D. Conn. 2009), *vacated and remanded on other grounds sub nom.* Nationwide Life Ins. Co. v. Haddock, 460 F. App'x 26 (2d Cir. 2012).  "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent…[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625-26 (1997).

---

[7] At least one of the named Plaintiffs who was housed in the Q Buildings has already tested positive for PCBs that have accumulated in his bloodstream, and although this Plaintiff may have a modified claim for relief from other class members, this factor alone is not a sufficient basis for determining that the typicality requirement is not met. "Differences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims."  Richards v. FleetBoston Fin. Corp., 235 F.R.D. 165, 173 (D. Conn. 2006) (*quoting* Ouellette v. Int'l Paper Co., 86 F.R.D. 476, 480 (D. Vt.1980)).

Satisfying the first part of the test, Plaintiffs are adequate representatives of the proposed class and the proposed subclass because, as set forth above, each of the Plaintiffs has been subjected to and exposed to the unsafe conditions at Osborn which form the basis for their claims, and more importantly, several of the named Plaintiffs have already tested positive for toxin exposure or have manifested medical conditions believed to have been caused either by toxin exposure or by drinking and/or bathing in contaminated water. All but one of the named Plaintiffs had been housed for some period of time in the Q Buildings, and as such, each serves as an adequate representative for other potential members of the Q Buildings Class. Most of the named Plaintiffs remain confined at Osborn, providing adequate representation for those potential Water Class members who likewise remain at Osborn. As such, the interests of the Plaintiffs coincide with, and are not antagonistic to, those of the proposed class and subclass members. There are no known conflicts of interest among class members, all of whom have a similar interest in vindicating their constitutionally protected rights.

Second, "class counsel must be qualified, experienced and generally able to conduct the litigation." Vincent v. Money Store, 304 F.R.D. 446, 456 (S.D.N.Y. 2015). Here, Plaintiffs' counsel, which has been appointed by the Court pursuant to Local Civil Rule 83.10, are associated with a well-regarding law firm with substantial resources and capacity for handling the challenges of class action litigation. Both undersigned counsel have significant experience conducting complex civil litigation and trying cases, including class actions, in both the state and federal courts of Connecticut, and both are capable of providing amply competent representation to class members.

## C.  Certification under Fed. R. Civ. P. 23(b)

Having demonstrated that the named Plaintiffs and the claims asserted in this action meet the requirements of Rule 23(a), Plaintiffs must next demonstrate that the requirements of at least one of the three subsections of Rule 23(b) is satisfied.  In this case, Plaintiffs seek certification under all three subsections of Rule 23(b).

### 1.  Rule 23(b)(1)

Certification under Rule 23(b)(1) is appropriate "if prosecuting separate actions by or against individual class members would create a risk of:  (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."  Fed. R. Civ. P. 23(b)(1).

Rule 23(b)(1) is a proper basis for class certification in cases "where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners)."  Amchem, 521 U.S. at 614 (citations omitted).  Further, "courts have also granted certification under this subsection to classes of inmates seeking injunctive relief.'"  Hilton v. Wright, 235 F.R.D. 40, 53 (N.D.N.Y. 2006) (quoting Ingles v. City of New York, No. 01 Civ. 8279(DC), 2003 WL 402565, at *8 (S.D.N.Y. Feb. 20, 2003)).  Certification under this provision is appropriate where injunctive relief is sought.  See, e.g. Barnes Group, Inc. v. Int'l Union United Auto. Aerospace & Agric. Implement Workers of Am., No. 3:16-CV-00559 (MPS), 2017 WL 1407638, at *4 (D. Conn. Apr. 19, 2017)

("Certification under Rule 23(b)(1)(A) 'is clearly geared toward cases seeking injunctive or declaratory relief.'")(*quoting* <u>Lemire v. Wolpoff & Abramson, LLP</u>, 256 F.R.D. 321, 329 (D. Conn. 2009)).

Applied to this case, class certification is appropriate in this case under Rule 23(b)(1)(A) to avoid inconsistent and varying adjudications with respect to individual members of the proposed class and subclass, nineteen of whom have already been joined in this consolidated action precisely to avoid inconsistent outcomes on claims premised on the contention that each inmate was entitled to be treated by the named Defendants in a manner that did not violate their constitutional rights. Each of the nineteen individual cases was previously assigned a separate docket number and was assigned to a different judge. "[I]ndividual cases would inevitably be brought in a variety of state and federal courts, where there is a definite possibility of inconsistent results. Such litigation – where hundreds of plaintiffs would bring the same claims against the defendants in a multitude of state and federal courts – can only prejudice both parties." <u>Hilton</u>, 235 F.R.D. at 54. Given the commonality of factual and legal issues between the cases, as well as the common relief sought, these cases were already consolidated in order to allow for common resolution of virtually identical factual and legal issues put forth by each of the consolidated plaintiffs to avoid inconsistencies in outcomes.

Second, under Rule 23(b)(1)(B), certification is appropriate to avoid the potential impact on non-party or absent class members of decisions in individual cases that would be dispositive of the essentially identical equitable claims asserted by such non-party or absent members in their own separate cases in the future. "Plaintiffs' allegations illustrate that an individual adjudication of the equitable claims raised by plaintiffs would indeed affect the interests of the absent class members. Further, the members of the potential class are currently inmates, and the

equitable relief sought would apply equally to the prospective and named plaintiffs in this action." Id., at 53. Again, the claims asserted in this case about conditions at Osborn are ripe for class certification since each of the Plaintiffs and each of the potential class members has suffered and/or will continue to suffer the same harm from the same conditions and treatment by the named Defendants, and addressing issues of liability and relief should be done uniformly and applicable equally to all potentially impacted individuals. Rule 23(b)(1) certification is warranted in this case.

### 2. Rule 23(b)(2)

Plaintiffs also seek to certify the class and subclass pursuant to Rule 23(b)(2), which provides for class certification where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). "Certification of an injunctive or declaratory judgment class is not appropriate when 'each individual class member would be entitled to a different injunction or declaratory judgment against the defendant… [T]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" Kennedy v. Esper, No. 3:16-cv-2010, 2018 WL 6727353, at *6 (D. Conn. Dec. 21, 2018) (quoting Dukes, 564 U.S. at 360).

Applied to the allegations in this case, Plaintiffs contend the named Defendants "acted or refused to act on grounds generally applicable to the class" through deliberate indifference to the conditions of confinement of the inmates at Osborn, and particularly in the Q Buildings, which subjected class members to an unreasonable risk of serious medical harm. Further, as required

for certification under Rule 23(b)(2), Plaintiffs seek, on behalf of themselves and all others similarly situated, injunctive relief against the named Defendants to remedy the conditions of confinement and to provide appropriate medical monitoring and care to the members of the proposed class and subclass. "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." Dukes, 564 U.S. at 360–61. Accordingly, class certification for purposes of the requested injunctive relief is appropriate under Rule 23(b)(2).

Although class certification under Rule 23(b)(2) may not be appropriate where the proposed class members seek monetary relief, to the extent "monetary damages are 'incidental' to the requested declaratory or injunctive relief, then those damages may not prevent certification under Rule 23(b)(2)." Elkind v. Revlon Consumer Prod. Corp., No. CV-14-2484(JS)(AKT), 2017 WL 9480894, at *13 (E.D.N.Y. Mar. 9, 2017), *report and recommendation adopted*, 2017 WL 1169552 (E.D.N.Y. Mar. 29, 2017) (*citing* Dukes, 564 U.S. at 360). In this case, Plaintiffs seek both injunctive and monetary relief against the named Defendants. In the event the Court determines that Plaintiffs' request for monetary relief is not incidental to the requested injunctive relief, where the classes can be subdivided into an injunctive class and a damages class, Rule 23(b)(2) still can be satisfied: "Where a plaintiff seeks both declaratory and monetary relief, the court may separately certify a damages-seeking class under Rule 23(b)(3), and an injunction-seeking class under Rule 23(b)(2)." Mazzanti v. Gen. Elec. Co., No. 13-CV-1799, 2017 WL 923905, *3 (D. Conn. Mar. 7, 2017). Accordingly, certification under Rule 23(b)(2) is appropriate.

### 3. **Rule 23(b)(3)**

Lastly, Plaintiffs seek certification of their damages claims under Rule 23(b)(3). To certify a class under Rule 23(b)(3), the Court must determine that Plaintiffs meet both the predominance and superiority requirements: specifically, Plaintiffs "must show that common questions of law or fact 'predominate' over purely individual questions and that a class action is 'superior' to other methods of resolving the dispute." In re American Int'l Group, Inc. Sec. Litig., 689 F.3d 229, 239 (2012).

First, the predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Haddock v. Nationwide Fin. Servs., Inc., 293 F.R.D. 272, 282 (D. Conn. 2013) (*quoting* Amchem, 521 U.S. at 623). This requirement is met if Plaintiffs can demonstrate that "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Id., at 282 (*quoting* In re AIG, 689 F.3d at 240). As this Court has held, "determining whether common issues predominate, courts focus on the liability issue ... and if the liability issue is common to the class, common questions predominate over individual ones." Id. (*quoting* Tiro v. Public House Investments, LLC, 288 F.R.D. 272, 280 (S.D.N.Y.2012)).

Further, "common issues may predominate when liability can be determined on a class-wide basis, even where there are individualized damage issues." Sykes v. Mel Harris & Assocs., LLC, 780 F.3d 70, 81 (2d Cir. 2015) (internal quotation marks omitted); *see also* Roach v. T.L. Cannon Corp., 778 F.3d 401, 409 (2d Cir. 2015) ("Individualized damages determinations alone cannot preclude certification under Rule 23(b)(3)," but it is a factor to "consider in deciding whether issues susceptible to generalized proof 'outweigh' individual issues.").

Applied here, class treatment under Rule 23(b)(3) is appropriate based upon the overwhelming common questions of law and fact, particularly as to the liability of each of the named Defendants in subjecting class members to unsafe and unconstitutional conditions of confinement, and as to the injunctive relief sought by each of the members of the proposed class and subclass, which would apply equally to all members of the class and subclass. In fact, resolution of common questions relating to liability in this case – for example, whether the named Defendants knew or should have known of the unsafe living conditions at Osborn and in the Q Buildings, and whether those same named Defendants acted with deliberate indifference to the health and safety – will be dispositive as to every member of the proposed class and subclass. In addition to the common questions relating to liability, the injunctive relief sought by Plaintiffs in the Complaint, including remedying the conditions of confinement and providing medical monitoring and treatment going forward, will be common to all members of the Class. The medical protocol for each individual exposed to PCBs, or to friable asbestos, or to unsafe drinking water, will be essentially the same for each member of the proposed class and subclass. In sum, although individual plaintiffs may have more particularized claims as to monetary damages, the overwhelming factual and legal issues to be addressed in each individual's case will be common to all class members as each member has been and/or continues to be subjected to the exact same conditions by the same group of Defendants.

In the end, the question of monetary damages will be driven, in part, by common questions and class-wide determinations. To the extent that individual damages will vary, they can be categorized into subgroups based upon whether (a) the Class members have confirmed medical diagnoses of conditions associated with exposure, as set forth above, (b) whether Class members develop any future conditions as a result of said exposure, and (c) whether Class

members are determined, through medical examination, to require ongoing medical monitoring based on elevated levels of toxins in their systems. Determining damages for individual Class members can thus be handled in a more ministerial fashion based upon easily verifiable medical records. If necessary, individual Class members may request separate hearings to determine specific damages after Class-wide liability is determined, a method of determining damages that is far more efficient than litigation of hundreds of separate lawsuits.

Second, Plaintiffs "must also show 'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" <u>Vincent v. Money Store</u>, 304 F.R.D. 446, 462 (S.D.N.Y. 2015) (*quoting* Fed. R. Civ. P. 23(b)(3)). "Rule 23(b)(3) ... lists four factors – individual control of litigation, prior actions involving the parties, the desirability of the forum, and manageability – which courts should consider in making these determinations." <u>Sykes</u>, 780 F.3d at 82. While these factors "seem to apply both to the predominance and superiority inquiry, ... they more clearly implicate the superiority inquiry… [M]anageability is, by the far, the most critical concern in determining whether a class action is a superior means of adjudication. As a component of manageability, in determining whether a class action in a particular forum is a superior method of adjudication, courts have considered when a particular forum is more geographically convenient for the parties or, for example, when the defendant is located in the forum state." <u>Id.</u> (internal quotation marks and omission omitted).

Class-wide treatment is a far superior method for managing and resolving the claims presented in this case, as recognized already by the Court's consolidation of these nineteen individual suits, especially compared to allowing each of the individual Plaintiffs and potential class members to pursue hundreds of claims for damages against the same named Defendants based on the same conduct. Most of the Plaintiffs, and a vast majority of the members of the

proposed class and subclass, remain confined as inmates at Osborn or other facilities, and they currently lack the resources and ability to individually control the progress of individual cases. "Where, as here, all class members' allegations are based on uniform policies and practices giving rise to predominantly common questions of fact and law, a class action is superior." Spencer v. No Parking Today, Inc., No. 12 CIV. 6323 ALC AJP, 2013 WL 1040052, at *27 (S.D.N.Y. Mar. 15, 2013), *report and recommendation adopted*, 2013 WL 2473039 (S.D.N.Y. June 7, 2013). As set forth above, once the underlying issues of liability are resolved as to all class members, the determination of individual damages claims can be done on a more ministerial level based upon the facts presented by each class member. Certification under Rule 23(b)(3), therefore, is also appropriate in this case.

### D. Appointment of Class Counsel

In the event the Court grants class certification, pursuant to Rule 23(g), Attorneys David P. Friedman and Lorey Rives Leddy, both of Murtha Cullina LLP, request to be appointed as class counsel. In considering such request, the Court is mandated to consider several factors enumerated in the Rule, including: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." The Court also may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. *See* Lemire v. Wolpoff & Abramson, LLP, No. 3:08-CV-00249 (CSH), 2009 WL 10689105, at *2 (D. Conn. Dec. 8, 2009).

In late 2017, the Court appointed undersigned counsel, through Local Civil Rule 83.10, to represent Plaintiffs in this action. Numerous additional plaintiffs have since been consolidated

into this action.  Undersigned counsel, each experienced litigators in complex matters, including class actions, in state and federal courts, and each with 30+ years of experience as attorneys, have become integrally involved in investigating the underlying facts and identifying potential claims in this case.  Counsel has drafted and filed two amended complaints, located potential expert witnesses, reviewed thousands of pages of documents produced by the Department of Corrections and TRC Environmental, Corp., and conducted one Rule 30(b)(6) deposition thus far.  Counsel also has developed a positive working relationship with the named Plaintiffs, many of whom communicate on a regular basis either through mail or by telephone.  In sum, counsel has the demonstrated ability to fairly and adequately continue representing the Plaintiffs and members of the classes/subclasses certified by the Court.  Further, the law firm of Murtha Cullina LLP has the resources, including a seasoned bench of litigators and litigation support staff, committed to providing excellent representation for all class members.  Accordingly, undersigned counsel respectfully requests that the Court appoint them as class counsel to represent the members in this case.

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, the named Plaintiffs in this Consolidated Action respectfully request that the Court grant their motion for class certification and for the appointment of undersigned counsel as class counsel, and grant such other and further relief as the Court deems just and proper.

Dated:          February 27, 2019
                Stamford, Connecticut

PLAINTIFFS SEAN TOLIVER,
JAMES BABULSKY, JEREMY
LOUIS BARNEY, WILLIAM BOO,
KENNETH CARTER, LUIS CLAUDIO,
ANTHONY R. JOHNSON, ROGER
JOHNSON, RANDAL LICARI, JOHN F.
MOORE, TIMOTHY MONROE, JOSE
PESANTE, JOSE RIVERA, MARCOS
RIVERA, HAROLD ROGERS, OSBERT
TEEKASINGH, ANTHONY C. WADE,
SR., ZION T. WEBB and TYSHUN
WILLLIAMS,

By:____*/s/ Lorey Rives Leddy*_____
David P. Friedman (ct# 03558)
Lorey Rives Leddy (ct# 19297)
MURTHA CULLINA LLP
177 Broad Street, 16th Floor
Stamford, CT 06901
Tel: (203) 653-5400
Fax: (203) 653-5444
dfriedman@murthalaw.com
lleddy@murthalaw.com

## CERTIFICATE OF SERVICE

This is to certify that on February 27, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

Carmel A. Motherway, Esq.
Steven A. Barry, Esq.
State of Connecticut
Office of the Attorney General
110 Sherman Street
Hartford, CT 06105


/s/ *Lorey Rives Leddy*
Lorey Rives Leddy