UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SEAN TOLIVER, ET AL. | : | LEAD CONSOLIDATED |
| | : | CASE NO. |
| v. | : | 3:16-cv-1899-SRU |
| | : | |
| SCOTT SEMPLE, ET AL. | : | |
| | : | JULY 24, 2019 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PRELIMINARY INJUNCTION**

The Consolidated Plaintiffs ("Plaintiffs") seek a preliminary injunction from the Court to compel forthwith the supply of bottled drinking water during the pendency of this action. Pursuant to Local Rule 7(a), Consolidated Plaintiffs in the above-captioned action, by and through their undersigned counsel, respectfully submit this Memorandum of Law in support of their Motion for Preliminary Injunction ("Motion"), filed pursuant to Fed. R. Civ. P. 65 and 18 U.S.C. § 3626, in which Plaintiffs seek an order of the Court enjoining the Defendants to immediately take steps to provide bottled drinking water to inmates of the Osborn Correctional Institute ("Osborn"). Plaintiffs submit in support of the Motion the Declaration of Lorey Rives Leddy ("Leddy Declaration"), which includes the affidavits and letters of 38 current and former inmates as evidence of the condition of the tap water and as evidence of the illnesses and medical problems suffered as a result of drinking and bathing in the water.

**I.      INTRODUCTION**

For decades, the tap water at Osborn available to inmates for drinking and bathing has been described as brown, brackish, and cloudy, with a foul odor and taste.

**ORAL ARGUMENT REQUESTED**
**TESTIMONY MAY BE REQUIRED**

Many inmates at Osborn, including several of the Plaintiffs, have tested positive for infection by a bacteria known as helicobacter pylori ("H. pylori"), which is typically a water-borne bacteria caused by sewage entering the water supply.  Since the filing of the Second Amended Consolidated Complaint (the "Complaint"), even more inmates at Osborn have come forward with evidence of diagnoses of H. pylori infection, and dozens of other inmates routinely complaint to the Defendants and seek medical treatment for digestive issues (most have never been tested for H. pylori despite the number of inmates who have already tested positive).[1]

As alleged in the Complaint and as set forth below, the issues with the tap water are well-known by administrators and staff at Osborn, including the named Defendants. Complaint, at ¶¶ 66-78.  Although the water is regularly tested as required by state regulations, the documents produced by the Department of Corrections reflect that the water *is not tested* for the presence of H. pylori.  Id., at ¶ 73.  Plaintiffs have alleged that staff members bring their own bottled water to the facility instead of drinking from taps. Id., at ¶ 66.  Even therapy dogs brought to Osborn to interact with inmates are provided with bottled or filtered water, while the inmates are forced to drink the putrid tap water. Id.  Also as set forth below, compelling inmates to drink the tap water, particularly given the number of inmates who have tested positive for H. pylori infection and who have complained about other chronic digestive ailments, is clearly inhumane and likely to constitute a violation of the inmates' Eighth Amendment rights.

---

[1] In addition to digestive issues from consuming the tap water, as set forth in the Complaint and in the affidavits and letters submitted herewith, the water also causes significant skin irritation and related issues from bathing in it.  These issues remain a part of the overall request for relief in the Complaint, but Plaintiffs seek immediate attention to the issues relating to the drinking water since the remedy is more easily attainable in the short-term.

As such, the Plaintiffs are likely to prevail on the merits of their claim against the Defendants with respect to the drinking water. Moreover, because the inmates are exposed to a risk of substantial, irreparable harm to their health as a result of the drinking water, and because providing the inmates with bottled water is a narrowly-construed remedy that is not likely to interfere with the operation of the criminal justice system, the relief sought herein should be granted, and the Defendants should be compelled to forthwith provide inmates at Osborn, including those Plaintiffs who remain incarcerated, with bottled drinking water.

## II.     FACTUAL BACKGROUND

As alleged in the Complaint, the tap water, which is piped into the facility from several wells on the grounds at Osborn, is not drinkable and may well be contaminated as a result of actions taken by grounds crews who drilled holes in sewage and waste pipes exiting the facility to ease clogging. Complaint, ¶ 83. Complaints by inmates about the quality and condition of the tap water, and about chronic digestive maladies and infection by H. pylori, have been consistent and well-known by the Defendants for years.

Current and former inmates at Osborn have provided dozens of affidavits and letters confirming that numerous inmates have tested positive for H. pylori infection since 2013. Based on the evidence submitted, the following inmates, identified by their initials and inmate numbers, have provided affidavits (redacted) or have otherwise been identified in letters (redacted) as having confirmed diagnoses of infection with H. pylori bacteria while at Osborn:

3

| | |
|---|---|
| J. L. | Inmate # 409636 |
| K. B. G. | Inmate # 404176 |
| S. H. | Inmate # 78630 |
| J. S. | Inmate # 223489 |
| C. L. | Inmate # 254805 |
| R. W. | Inmate # 309419 |
| R. B. | Inmate # 193919 |
| J. B. | Inmate # 318996 |
| Y. H. L. | Inmate # 281693 |
| F. S. | Inmate # 408441 |
| B. S. | Inmate # 291453 |
| L. A. | Inmate # 66789 |
| B. R. | Inmate # 285898 |
| C. C. | Inmate # 354500 |
| J. M. | Inmate # 344691 |
| E. P. | Inmate # 243412 |
| L. C. | Inmate # 316418 |
| J. B. | Inmate # 128827 |
| E. F. | Inmate # 155356 |
| J. B. | Inmate # 178168 |

Many other inmates, including most of the named Plaintiffs, have provided evidence documenting experiences with severe and chronic digestive problems occurring for the first time while confined at Osborn. Most of these inmates have requested medical treatment, but have been denied testing or treatment for H. pylori infection. In other words, although we have some access to information regarding inmates who have actually been diagnosed with the bacterial infection, based on voluntary statements provided by the above-referenced inmates, the likelihood is that many others have contracted H. pylori while at Osborn. Many inmates have already become symptomatic, and many more are likely to become symptomatic in the future. Copies of 38 separate

4

inmate affidavits and letters concerning the water condition at Osborn are appended to the Leddy Declaration as **Exhibits 1 through 38**.[2]

The Centers for Disease Control and Prevention ("CDC"), an agency of the federal government that monitors and informs the public regarding health and medical issues, published a fact sheet, in July 1998 (a copy of which is appended to the Leddy Declaration as **Exhibit 39**), acknowledging both (i) the likely link between contaminated drinking water and H. pylori infection, and (ii) the link between such infection with peptic ulcers that, left untreated, substantially increases the risk for developing gastric cancer and a form of lymphoma ("MALT") associated with the lining of the stomach.  The CDC further reports that H. pylori is most commonly transferred through fecal-oral routes, including through water that has been contaminated by sewage.

As alleged in the Complaint, several Plaintiffs became aware that maintenance crews at Osborn drilled holes at various intervals along waste pipes exiting the facility, making it easier for the crews to snake clogged sewage lines. Complaint, at ¶ 74. These allegations have been corroborated by an affidavit submitted to undersigned counsel by an inmate at Osborn who was previously a licensed plumber and who worked alongside the maintenance crews at Osborn.  It is believed that these holes have likely allowed raw sewage to seep into the surrounding soil and groundwater,

---

[2] Although during his deposition, under Fed. R. Civ. P. 30(b)(6), Richard Hardy, Plant Facility Engineer at Osborn, testified he would drink the tap water at Osborn, he also repeated several times that, to his knowledge, "there is nothing wrong, no indication from the Department of Health or from any other source that there is anything wrong with the water at the Osborn Correctional Facility."  See 11/27/2018 Depo. Tr., at 146:16-20; 147:3-8; 147:19-22; 147:22-148:2; 157:14-17; 209:15-18 (transcript excerpts are appended to the Leddy Declaration as **Exhibit 40**). He refused to answer the question of whether he would voluntarily shower in the water at Osborn.

5

including possibly into the wells utilized for drinking water at the facility. Such contamination, if demonstrated, would conclusively link the drinking water to the H. pylori infection in inmates of Osborn.[3]

Certainly, the physical descriptions of the water by the numerous inmates who have come forward to share their stories demonstrates that something is not right with the tap water at Osborn. The high coincidence of inmates contracting H. pylori while at Osborn, coupled with the fact that the water does not appear to be tested for the presence of H. pylori, leads to the inescapable inference of a direct link between the tap water and the digestive ailments suffered by the inmates at Osborn, including the Plaintiffs.

## III. LEGAL ARGUMENT

Under 18 U.S.C. § 3626, the District Court is authorized to enter a preliminary injunction in a prisoner's rights case under specific circumstances:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2).

The standard for obtaining a preliminary injunction under Rule 65 is well-settled in the Second Circuit. "The moving party must show (1) irreparable harm and (2) either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the

---

[3] No known prisoner's rights actions have been commenced relating to drinking water and H. pylori infection at any other of the 18 correctional facilities (15 of which remain open) in Connecticut other than Osborn, further indicating that the issue of such contamination is specific to the conditions of the wells and drinking water at Osborn.

6

merits and a balance of hardships tipping decidedly toward the party seeking the injunctive relief."  Covino v. Patrissi, 967 F.2d 73, 76-77 (2d Cir. 1992); *see also* Jolly v. Coughlin, 76 F.3d 468, 473 (2d Cir. 1996).

Where, as here, the moving party seeks a mandatory injunction to change the status quo – for example, requesting that Defendants take affirmative action to change a hazardous condition pending resolution of the claims in the Complaint – a higher standard applies:  "The moving party must make a 'clear' or 'substantial' showing of a likelihood of success where (1) the injunction sought 'will alter, rather than maintain, the status quo' – i.e., is properly characterized as a 'mandatory' rather than 'prohibitory' injunction; or (2) the injunction sought 'will provide the movant with substantially all the relief sought, and that relief cannot be undone even if the defendant prevails at a trial on the merits.'"  Jolly, 76 F.3d at 473 (*quoting* Tom Doherty Associates, Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 33–34 (2d Cir.1995)).

### A.     Irreparable Harm

"The concept of irreparable harm has been described 'as certain and imminent harm for which a monetary award does not adequately compensate.' … [A]s a general matter, there is a presumption of irreparable harm when there is an alleged deprivation of constitutional rights."  V.W. by & through Williams v. Conway, 236 F. Supp. 3d 554, 588 (N.D.N.Y. 2017) (*quoting* Donohue v. Mangano, 886 F.Supp.2d 126, 149–50 (E.D.N.Y. 2012), and Wisdom Import Sales Co. v. Labatt Brewing Co., 339 F.3d 101, 113–14 (2d Cir. 2003)).  "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."

7

Mitchell v. Cuomo, 748 F.2d 804, 806 (2d Cir. 1984) (*quoting* 11 C. Wright & A. Miller, Federal Practice and Procedure, § 2948, at 440 (1973)).

Here, as alleged in the Complaint, the drinking water provided to inmates at Osborn is consistently described as discolored, putrid and foul-smelling.  More significantly, numerous inmates are known to have tested positive for H. pylori bacterial infection, and countless other inmates, including several named Plaintiffs, have complained of regular and severe digestive issues that appear connected to drinking the tap water at Osborn.  Despite such complaints, many of the inmates have never been tested for H. pylori or treated for their digestive complains; inmates are still forced to drink the water.

Publicly available records of the CDC reflect a substantially higher risk of contracting gastric cancer or other serious medical issues such as peptic ulcers as a result of untreated infection to H. pylori, particularly when the person infected has become outwardly symptomatic.  The risks for long-term, irreparable harm should be obvious.  As the United States Supreme Court has recognized, "[w]e would think that a prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery."  Helling v. McKinney, 509 U.S. 25, 33 (1993).  Given the evidence contained in the numerous affidavits submitted in support of this Motion, from inmates diagnosed with H. pylori infection and from other inmates who have regularly complained of serious and painful digestive problems attributed to drinking the tap water, it is clear that many of the inmates who remain at Osborn are likely to suffer irreparable harm if the relief requested is not granted by the Court.

## B.     Likelihood of Success on the Merits

With respect to establishing a likelihood of success on the merits, Plaintiffs have asserted numerous claims regarding the conditions of their confinement at Osborn that violate their Eighth Amendment rights, including the claim that the tap water causes severe digestive problems and infection with H. pylori bacteria.  Osborn is, quite frankly, notorious for the awful appearance and smell of the tap water; the evidence submitted in support of the Motion further indicates a plausible link between drinking the water and the various ailments complained of by the inmates.

To establish that conditions of confinement violate the inmates' rights under the Eighth Amendment, the Plaintiffs must prove both (1) a sufficiently serious deprivation, and (2) that the defendants acted with "deliberate indifference."  See Wilson v. Seiter, 501 U.S. 294, 298, 303–04 (1991).  The Plaintiffs' proof necessarily must "consist of both objective and subjective elements – the plaintiff must demonstrate that the alleged deprivation is sufficiently serious under an objective standard and that the charged officials acted with a sufficiently culpable state of mind."  Jolly v. Coughlin, 894 F. Supp. 734, 746 (S.D.N.Y. 1995), aff'd, 76 F.3d 468 (2d Cir. 1996); see also Hudson v. McMillian, 503 U.S. 1, 9, (1992) ("those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation.") (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). "An inmate may prevail on an Eighth Amendment claim if he can establish an objective element, that the actions of prison officials were sufficiently serious, and a subjective element, that the officials acted with deliberate indifference to inmate health or safety."

Mele v. Connecticut, No. 3:06-CV-1741 (SRU), 2007 WL 445488, at *1 (D. Conn. Feb. 9, 2007).

### 1.     Objective Element:  Serious Risk to Health and Safety

"[T]o establish the objective element of an Eight Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency." Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002) (*quoting* Helling, 509 U.S. at 35–36).  Under the Eighth Amendment, States must not deprive prisoners of their "basic human needs – e.g., food, clothing, shelter, medical care, and reasonable safety." Helling, 509 U.S. at 32.  Nor may prison officials expose prisoners to conditions that "pose an unreasonable risk of serious damage to [their] future health." Id., at 35.

"Water that is suitable for drinking and bathing is undeniably one of 'life's necessities,' and … the Eighth Amendment therefore requires that it be supplied to inmates." Bellezza v. Fischer, No. 05 CIV. 98 (DLC), 2006 WL 3019760, at *4 (S.D.N.Y. Oct. 24, 2006).  "There is no question that subjecting inmates to unsafe or unhealthy drinking water would be a sufficiently 'serious' risk that would satisfy the objective element of an Eighth Amendment cause of action." Thompson v. Carlsen, No. 08-CV-0965, 2010 WL 3584409, at *8 (N.D.N.Y. Aug. 16, 2010), *report and recommendation adopted*, 2010 WL 3584396 (N.D.N.Y. Sept. 7, 2010); *see also* LaBounty v. Coughlin, 137 F.3d 68, 70–71 (2d Cir.1998).  Courts have recognized that "prison officials [may not] expose prisoners to conditions that 'pose an unreasonable risk of serious damage to [their] future health.'" Phelps, 308 F.3d at 185 (*quoting* Helling, 509 U.S. at 35).

In this case, the evidence presented demonstrates that, for years, the tap water at Osborn has been unusually offensive in color, odor and taste.  Numerous inmates

8934400v1

have come forward with their personal testimonials of testing positive for H. pylori, a bacterial infection that substantially increases the risk of serious future health problems, or of having chronic digestive issues that only manifested once they were confined at Osborn.  Because clean drinking water is a life necessity, and the drinking water at Osborn appears to be connected with widespread health problems, many of which have been documented as causing long-term medical problems, the objective element is met in this case.

### 2. Subjective Element:  Deliberate Indifference

With respect to the subjective element of an Eighth Amendment violation, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  This "deliberate indifference" element is equivalent to the familiar standard of "recklessness" as used in criminal law. Id., at 839-40. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id., at 842.  "Although an official must have knowledge of a substantial risk in order to have acted with deliberate indifference, a fact finder may infer that knowledge 'from the very fact that the risk was obvious.'" Bellezza, 2006 WL 3019760, at *4 (*quoting* Phelps, 308 F.3d at 186).

11

In this case, inmates have been complaining about the quality and condition of the tap water for years. Inmates also have continuously complained to the Defendants about digestive pain and related problems which either appeared initially or were exacerbated as a result of drinking the tap water at Osborn. Many of the Plaintiffs, along with other inmates, have filed grievances with the Department of Corrections that relate directly to the quality and condition of the tap water.

While the Defendants are likely to assert that the tap water passes regular state-mandated tests, the documents produced to date by the Department of Corrections indicate that the Defendants do not test for H. pylori in the water. The test results also do not explain the cause of the foul color, odor and taste of the tap water that the inmates must drink. *See* Bellezza v. Fischer, No. 05 CIV. 98 DLC, 2007 WL 2059824, at *1 (S.D.N.Y. July 16, 2007) (even though defendants "offered evidence that the discolored water was actually safe to drink, the conflicting evidence that inmates could not drink or bathe with it without suffering extreme discomfort" created a genuine issue of material fact "as to whether the inmates actually suffered a constitutional deprivation."). Perhaps the most telling conduct by the Defendants in establishing deliberate indifference is the fact that staff members at Osborn routinely bring their own bottled water from home rather than drinking the tap water at the facility. Even therapy dogs are provided with bottled or filtered water.

### C. Balance of Hardships

Lastly, the Court must consider the balance of hardships in determining whether to grant the requested injunctive relief. "Congress codified this weighing of the hardships in the PLRA, which directs courts to give substantial weight to any adverse

8934400v1

impact on public safety or the operation of the criminal justice system caused by the prospective injunctive relief." Dodge v. County of Orange, 282 F. Supp.2d 41, 71 (S.D.N.Y. 2003).

In this case, the balance of hardships leans in favor of granting the requested relief – an injunction requiring the provision of bottled drinking water pending either the outcome of this action or the completion of full-scale testing of the tap water by a neutral party to determine whether the water is, in fact, safe for consumption. Such relief will not impact public safety or the operation of the criminal justice system, and is narrowly tailored to address and partially remedy the specific condition that is one of the principal subjects of the Plaintiffs' claims. See Mitchell, 748 F.2d at 808 ("Faced with such a conflict between the state's financial and administrative concerns on the one hand, and the risk of substantial constitutional harm to plaintiffs on the other, we have little difficulty concluding that the district judge did not err in finding that the balance of hardships tips decidedly in plaintiffs' favor.").

In sum, because the Plaintiffs can demonstrate (i) that they are likely to succeed on the merits of their claim in the Complaint that the drinking water served to inmates at Osborn is likely causing serious illnesses among the inmates, including infection with H. pylori bacteria, in violation of the Eighth Amendment of the United States Constitution, (ii) that a substantial threat of irreparable injury exists to both the Plaintiffs and other inmates at Osborn if the injunction is not issued, including the inmates' continued exposure to the additional risk of long-term illnesses associated with H. pylori infection, including cancer of the stomach lining, and (iii) that the threatened injury outweighs any harm that would result in the event the injunction is granted, and will not disserve the

8934400v1

public interest, a preliminary injunction should issue forthwith. At least until proper testing can be conducted to determine the nature and extent of the contamination of the drinking water, and/or until proper remedial actions can be taken to rectify any contamination in the drinking water, a Court order requiring that inmates be provided with bottled drinking water is narrowly tailored relief and is not likely to have an adverse impact on public safety or the operation of a criminal justice system.

WHEREFORE, the Consolidated Plaintiffs respectfully request that this Court issue a preliminary injunction that the Defendants forthwith provide inmates with bottled drinking water, and grant such other and further relief as the Court deems just and proper.

Dated:     July 24, 2019
           Stamford, Connecticut            PLAINTIFFS SEAN TOLIVER, JAMES BABULSKY, JEREMY LOUIS BARNEY, WILLIAM BOO, KENNETH CARTER, LUIS CLAUDIO, COURTNEY GREEN, ANTHONY R. JOHNSON, ROGER JOHNSON, RANDAL LICARI, JOHN F. MOORE, TIMOTHY MONROE, JOSE PESANTE, JOSE RIVERA, MARCOS RIVERA, HAROLD ROGERS, OSBERT TEEKASINGH, ANTHONY C. WADE, SR., ZION T. WEBB and TYSHUN WILLLIAMS,

By:    /s/ Lorey Rives Leddy
David P. Friedman (ct# 03558)
Lorey Rives Leddy (ct# 19297)
MURTHA CULLINA LLP
177 Broad Street, 16th Floor
Stamford, CT 06901
Tel: (203) 653-5400
Fax: (203) 653-5444
dfriedman@murthalaw.com
lleddy@murthalaw.com
*Their Attorneys*

14

## **CERTIFICATE OF SERVICE**

This is to certify that on July 24, 2019, a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing].  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing].  Parties may access this filing through the Court's system.

Carmel A. Motherway, Esq.
Steven Barry, Esq.
Office of the Attorney General
110 Sherman Street
Hartford, CT 06105

                                              /s/  *Lorey Rives Leddy*
                                              Lorey Rives Leddy (ct#19297)

8934400v1