# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SEAN TOLIVER, et al.,
     Plaintiffs,

     v.

SEMPLE, et al.,
     Defendants.

No. 3:16-cv-1899 (SRU)

## RULING ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Sean Toliver initiated this action against various members of the Connecticut Department of Correction in November 2016. He alleges unconstitutional conditions of confinement at Osborn Correctional Institution ("Osborn"). Since the filing of Toliver's complaint, nineteen other cases have been consolidated with the instant case and the consolidated plaintiffs filed their Second Amended Consolidated Complaint on September 21, 2018. Sec. Am. Consol. Compl., Doc. No. 114. The consolidated plaintiffs are current or former inmates housed in the "Q Buildings" at Osborne and allege unconstitutional conditions of confinement because they were exposed to excessive levels of polychlorinated biphenyls (PCBs), friable asbestos, and contaminated water. *See* Sec. Am. Consol. Compl., Doc. No. 114 at ¶ 7. On February 27, 2019, the plaintiffs moved for class certification on one class and one sub-class pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure. *See* Mot. for Class Cert., Doc. No. 126. Plaintiffs now seek appointment of class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

The defendants make what amounts to a motion to dismiss in their opposition brief, arguing that "Plaintiffs' claims are barred," Opp. to Mot. for Class Cert., Doc. No. 138 at 1, because the plaintiffs lack standing and, further, that they failed to exhaust their administrative

remedies under the Prison Litigation Reform Act ("PLRA").  Opp. to Mot. for Class Cert., Doc. No. 138 at 5 (ECF pg. no.).  Furthermore, the defendants assert that the plaintiffs fail to meet the requirements for class certification under Fed. R. Civ. P. 23.  *Id.* For the reasons that follow, the plaintiffs' motion is **granted** and the class and sub-class are certified and class counsel is appointed.

## I. Class Certification

"In determining whether class certification is appropriate, a district court must first ascertain whether the claims meet the preconditions of Rule 23(a) of numerosity, commonality, typicality, and adequacy." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008).  A court "may then consider granting class certification where it 'finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Id.* at 202 (quoting Fed. R. Civ. P. 23(b)(3)).  Class certification is appropriate "only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2001) (internal quotation marks omitted).  "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).

Here, the plaintiffs seek certification of one class and one sub-class.  *See* Mot. for Class Cert., Doc. No. 126.  They define the "Contaminated Water Class" as "all current and former inmates of Osborn who, from November 19, 2013 through the present, have had to drink and shower in tap water from one or more of the onsite wells at Osborn, whether or not such current

or former inmates were housed in the Q Buildings." *Id*. at 1. Further, the plaintiffs define the "Q Buildings Subclass" as "[a]ll current and former inmates of Osborn who were housed in the Q Buildings from November 19, 2013 through the closing of the Q Buildings in or around December 2016, who may have been exposed to PCBs and friable asbestos." *Id*. The defendants only opposed the "Contaminated Water Class"; they make no mention of the claims relating to asbestos and PCB exposure.

A. <u>Certification under Fed. R. Civ. P. 23(a)</u>

The first step of class certification analysis is whether the plaintiffs satisfied the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a)(1)-(4). The plaintiffs have done so here.

1. *Numerosity*

"The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make us of the class appropriate." *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, LLC.*, 504 F.3d 229, 244-45 (2d Cir. 2007). "[E]vidence of exact class size or identity of class members" is not required for purposes of satisfying the numerosity requirement. *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). Numerosity is presumed, however, "at a level of 40 members." *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Further, "[d]etermination of practicability depends on all the circumstances surrounding a case, not on mere numbers. . . . Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of

claimants to institute individual suits, and requests for prospective injunctive relief which won't involve future class members." *Robidoux*, 987 F.3d at 936.

Here, the plaintiffs contend that the members of the class and sub-class "are so numerous that joinder of their claims is impracticable." Mem. in Supp. Mot. for Class Cert., Doc. No. 126-1 at 15 (ECF pg. no.). Based on the proposed class definition, and the nature of the class members, it seems quite clear that the plaintiffs will reach the 40-member presumptive threshold. The plaintiffs have shown that the Q Buildings held more than 400 inmates at one time[1] and, therefore, it is likely that the class and sub-class will include hundreds, if not thousands, of former and current prisoners housed there. With such a large group of potential plaintiffs and the circumstances surrounding the case, it would serve the purpose of judicial economy to avoid a "multiplicity of actions." *Robidoux*, 987 F.3d at 936. Furthermore, many, if not most, of the class members are currently incarcerated, which may hinder their "ability … to institute individual suits." *Id*. Accordingly, the plaintiffs have satisfied the numerosity requirement.

2. *Commonality*

"The commonality requirement is met if plaintiffs' grievances share a common question of law or fact." *Central States*, 504 F.3d at 245 (internal quotation marks omitted). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," which "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). "What matters to class certification … is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of

---

[1] *See* Q Buildings Press Release, Mem. in Supp. Mot. for Class Cert., Doc. No. 126-1 at 15, n.6.

the litigation." *Id.* at 350 (emphasis in original) (internal quotation marks omitted). Still, the "claims must depend on a common contention." *Id.*

Here, the plaintiffs assert that the proposed class are inmates who were subjected to unconstitutional conditions of confinement because they were exposed to harmful toxins and unsafe drinking water and, further, that the defendants knew of the unconstitutional conditions of confinement and failed to remedy them. Twenty cases, including this lead case, have already been consolidated due to the similarity of the factual allegations and legal assertions in the complaints. Accordingly, it seems clear that the plaintiffs' cases share common questions of both law and fact and, further, that a class proceeding will generate common answers, particularly with respect to the defendants' liability and, relatedly, the plaintiffs' claims for equitable relief. Accordingly, the plaintiffs have satisfied the commonality requirement.

### 3. *Typicality*

"Typicality requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Central States*, 504 F.3d at 245 (internal quotation marks omitted). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying the individual claims." *Robidoux*, 987 F.2d at 936-37.

Here, again, the claims arise out of the same set of facts and circumstances, and the proposed class of plaintiffs all purport to have been, or continue to be, subjected to unconstitutional conditions of confinement due to the alleged exposure to harmful toxins and/or contaminated drinking water. The claims with respect to the defendants' liability are sufficiently

similar as well. As mentioned, twenty claims have already been consolidated because of their related nature. The allegedly unconstitutional conditions of confinement and the defendants' purported deliberate indifference affected all of the inmates and, therefore, the claims of the class representatives are typical of the class claims. Accordingly, the plaintiffs have satisfied the typicality requirement.

### 4. *Adequacy*

"Adequacy of representation means that the class representatives will fairly and adequately protect the interests of the class." *Central States*, 504 F.3d at 245 (internal quotation marks omitted). "Generally, adequacy of representation entails inquiry as to whether: 1) the plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). The defendants argue that because the named plaintiffs failed to exhaust their administrative remedies and/or lack standing, they cannot adequately represent the class. Mem. in Opp., Doc. No. 138 at 14. For the reasons stated more fully below, those arguments are meritless. Furthermore, the defendants argue that the named plaintiffs have dissimilar injuries and, therefore, dissimilar interests from the class members. The defendants focus, however, on the plaintiffs' alleged *medical* injuries. The named plaintiffs, and the class, all allege the same injury: a deprivation of their constitutional rights based on inadequate conditions of confinement. Therefore, the class representatives adequately represent the class.

The defendants do not address the second prong of the adequacy requirement, the adequacy of the plaintiffs' attorneys to represent the class. Indeed, plaintiffs' attorneys are quite

"qualified, experienced and able" to conduct a class-action litigation. Accordingly, the plaintiffs have satisfied the adequacy requirement.

5. *Ascertainability*

"Though not explicit in Rule 23, the Second Circuit has 'recognized an implied requirement of ascertainability.'" *Barnes Group, Inc. v. International Union United Automobile & Agricultural Implement Workers of America*, 2017 WL 1407638, at *4 (D. Conn. Apr. 19, 2017) (quoting *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (internal quotation marks omitted)). "A class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." *Brecher*, 806 F.3d at 24-25. The proposed class is a group of inmates who lived in certain housing situations during a specified amount of time. The defendants should be able to identify the members from their records. Accordingly, the plaintiffs have satisfied the ascertainability requirement.

B. <u>Certification under Fed. R. Civ. P. 23(b)</u>

The plaintiffs must also show that the requirements of at least one of the three subsections of Rule 23(b) is satisfied. Fed. R. Civ. P. 23(b)(1)-(3). The plaintiffs assert that they meet the requirements of all three subsections. Only one is necessary, however. Fed. R. Civ. P. 23(b).

Here, the plaintiffs meet the requirements of Rule 23(b)(1)(A) which provides that a class action may be maintained if "prosecuting separate actions by or against individual class members would create a risk of … inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class[.]" Fed. R. Civ. P. 23(b)(1)(A). Certification under Rule 23(b)(1)(A) "is clearly geared

toward cases seeking injunctive or declaratory relief." *Lemire v. Wolpoff & Abramson, LLP*, 256 F.R.D. 321, 329 (D. Conn. 2009); *see also Barnes Group*, 2017 WL 1407638, at *4. Further, courts generally certify classes under that section when the proposed class consists of inmates. *See Hilton v. Wright*, 235 F.R.D. 40, 53 (N.D.N.Y. 2006); *Ingles v. City of New York*, 2003 WL 402565, at *8 (S.D.N.Y. Feb. 20, 2003). The plaintiffs here primarily seek injunctive relief with respect to their conditions of confinement. If class certification was denied, the plaintiffs "would likely have to pursue separate adjudications of the same claim raised by this action, creating the risk of inconsistent outcomes that Rule 23(b)(1)(A) is designed to avoid." *Barnes Group*, 2017 WL 1407638, at *4. Accordingly, class certification is appropriate under Rule 23(b)(1)(A).

## II.     Exhaustion & Standing

The defendants also raise, purportedly in opposition to class certification, arguments that the named plaintiffs failed to exhaust their administrative remedies and, further, do not have standing to sue. Opp. to Mot. for Class Cert., Doc. No. 138. Neither exhaustion nor standing are part of the class certification analysis, because both challenge whether the case should proceed, not whether the class should be certified, and are better addressed by a motion to dismiss, which the defendants have not filed.[2] Accordingly, an opposition to a motion for class certification is not the appropriate vehicle to make those arguments. Regardless, the arguments fail.

### A.  Standing

The defendants also argue that the named plaintiffs lack standing because they do not allege a cognizable constitutional injury. Opp. to Mot. for Class Cert., Doc. No. 138 at 8. The

---

[2] The defendants filed a motion to dismiss on March 21, 2017. *See* Doc. No. 33. Some of the defendants argued that the plaintiffs failed to allege sufficient facts of personal involvement. *See id.* Furthermore, the defendants alleged that the plaintiffs failed to state an Eighth Amendment claim and lack standing to sue one of the defendants. *See id.* After the filing of the motion, plaintiffs counsel was appointed. The motion to dismiss, among other motions, were therefore denied without prejudice. *See* Order, Doc. No. 83. The motion was not refiled.

defendants argue that the plaintiffs did not "offer any competent medical evidence to show, to a reasonable degree of medical certainty, that there is a nexus between the alleged contaminated water and any alleged physical injury." *Id*.

"For purposes of determining standing, [the court] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party (i.e., the class members)." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006) (internal quotation marks omitted).[3] Here, the plaintiffs sufficiently allege that their constitutional rights have been infringed upon with respect to the conditions of their confinement and that they have been injured because of those conditions. The defendants seek to introduce evidence to refute the merits of the plaintiffs' claims, which may serve them at the summary judgment stage or to a jury. At this stage, however, the plaintiffs' allegations of unconstitutional conditions of confinement plausibly allege "(1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *see also Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001) ("where the right at issue is provided directly by the Constitution or federal law, a prisoner has standing to assert that right even if the denial of that right has not produced an 'actual injury'").

---

[3] As a threshold matter, the class certification requirements (numerosity, commonality, typicality, and adequacy) are decided under a preponderance of the evidence standard. *See In re Initial Public Offerings Securities Litigation*, 471 F.3d 24 (2d Cir. 2006) (courts must determine that each of the Rule 23 requirements has been met by resolving factual disputes relevant to the requirements, and must find there was more than mere "some showing" for numerosity, commonality, typicality, and adequacy); *see also Myers*, 624 F.3d at 547 (post-*In re IPO* Second Circuit case applying preponderance standard). Courts are not required, however, to perform a merits assessment of other, unrelated issues, even when raised at the class certification stage. *See In re IPO* at 41 (district judge "should not assess any aspect of the merits unrelated to a Rule 23 requirement"). Furthermore, the Second Circuit has recently declined to decide "whether plaintiffs generally may rely on allegations in their complaint to establish standing at the class-certification stage." *Melito v. Experian Marketing Solutions, Inc.*, 923 F.3d 85, 94-95 (2d Cir. 2019). Absent any indication that standing requirements are heightened, I will apply the well-established standard. Moreover, the defendants' arguments about standing and exhaustion are ultimately general arguments about the plaintiffs' capabilities to bring suit rather than their specific capabilities to represent the class, though those inquiries are necessarily related.

B.  <u>Exhaustion</u>

The defendants argue that the named plaintiffs failed to exhaust their administrative remedies and, therefore, the case is barred from federal court.  Opp. to Mot. for Class Cert., Doc. No. 138 at 5.  The PLRA proves, in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  That exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Failure to exhaust is an affirmative defense, and, therefore, "inmates are not required to specially plead or demonstrate exhaustion in their complaints."  *Jones v. Bock*, 549 U.S. 199, 216 (2007).  "Dismissal under Rule 12(b)(6) for failure to exhaust is thus appropriate only where nonexhaustion is apparent from the face of the complaint."  *Roland v. Smith*, 907 F. Supp. 2d 385, 388 (S.D.N.Y. 2012).  The named plaintiffs allege here that they have each taken "steps, while incarcerated or otherwise, to exhaust the administrative remedies available to him, including filing complaints with the respective wardens regarding their conditions of confinement."  Sec. Am. Consol. Compl., Doc. No. 114 at ¶ 79.  "Thus, it is not clear from the face of the … Complaint whether the Named Plaintiffs have exhausted their administrative remedies, so dismissal is inappropriate at this stage of the litigation."  *Butler v. Suffolk County*, 289 F.R.D. 80, 93 (E.D.N.Y. 2013) (certifying class of inmates and declining to dismiss for exhaustion purposes when plaintiffs alleged they had "raised the[] unsanitary and hazardous conditions [of confinement] … with corrections officials on many occasions").  Furthermore, exhaustion requirements may be excused where: "(1) administrative remedies were not in fact

available to the prisoner, (2) defendants' own actions inhibit[ed] exhaustion, or (3) special circumstances … justify non-exhaustion." *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011) (internal quotation marks omitted). "Such a determination cannot be made on an undeveloped record." *Butler*, 289 F.R.D. at 93.

Accordingly, to the extent that the defendants oppose class certification due to failure to exhaust administrative remedies, that effort fails. *See id.*

## III.  Conclusion

For the foregoing reasons, the plaintiffs' Motion for Class Certification is **granted** and the following classes and subclass are certified:

(1) Contaminated Water Class comprised of all current and former inmates of Osborn who, from November 19, 2013 through the present, have had to drink and shower in tap water from one or more of the onsite wells at Osborn, whether or not such current or former inmates were housed in the Q Buildings.

(2) Q Buildings Subclass comprised of all current and former inmates of Osborn who were housed in the Q Buildings from November 19, 2013 through the closing of the Q Buildings in or around December 2016, who may have been exposed to PCBs and friable asbestos.

The named plaintiffs in the Second Amended Consolidated Complaint are named as class representatives.  Furthermore, Attorney Lorey Rives Leddy and Attorney David Friedman of Murtha Cullina LLP are appointed as class counsel.

So ordered.

Dated at Bridgeport, Connecticut, this 26th day of September 2019.

/s/ STEFAN R. UNDERHILL

Stefan R. Underhill
United States District Judge