## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SEAN TOLIVER, ET AL. | : | LEAD CONSOLIDATED |
| | : | CASE NO. |
| v. | : | 3:16-cv-1899-SRU |
| | : | |
| SCOTT SEMPLE, ET AL. | : | |
| | : | December 11, 2023 |

### JOINT MOTION TO DECERTIFY CLASS

Consolidated Plaintiffs and Defendants jointly move this Court for an order decertifying the class in the above-captioned matter. As set forth herein, the bases for obtaining certification of the class, as granted in 2019, are no longer viable on several grounds, and accordingly, under Fed. R. Civ. P. 23, class certification is no longer desirable or warranted.

### BACKGROUND

This case consists of twenty-three (23) consolidated actions involving claims brought under 42 U.S.C. § 1983, based on the conditions of confinement at Osborn Correctional Institute. Based on the number of individuals with similar claims and the commonality of the allegations, the Consolidated Plaintiffs moved for class certification and appointment of class counsel in February 2019 [*see* ECF No. 126]. The Defendants opposed certification and, after a hearing, the Court granted certification of one class, the Contaminated Water Class, which consists of all current and former inmates of Osborn, from November 19, 2013 to the present, who drank or showered with tap water in any wing of the facility, and one sub-class, the Q Buildings Subclass, which consists of all current and former inmates of Osborn who were housed in the Q Building at Osborn between November 19, 2013 through the closing of the Q Buildings in or around December 2016, and who may have been exposed therein to PCBs and friable asbestos. ECF No. 147. The Court also appointed Murtha Cullina LLP as class counsel. *Id.*

13238506v1

Since certification, document discovery in the matter has been completed and expert witnesses were retained by the Consolidated Plaintiffs to assist in evaluating the documents and the conditions at Osborn and to provide expert opinions regarding the conditions of confinement. With respect to the allegations regarding the quality of the tap water used by inmates for drinking and bathing, Consolidated Plaintiffs engaged Peter Dermody, C.P.G., a certified geologist and hydrogeologist, to review historic water testing records and to take water samples at Osborn to determine whether or not the water was potable or contained contaminants. That testing took place in May 2021 and, although Mr. Dermody raised some questions about the conditions of the testing (hydrants were flushed just prior to the testing) and about the elevated levels of sulfur and chlorine found in the water, the test results overall indicated the water was potable and in compliance with standards set by the State of Connecticut and the Environmental Protection Agency. Mr. Dermody also confirmed that no generally accepted scientific testing protocol currently exists to detect the presence of the bacteria, Helicobacter Pylori ("H. Pylori"), in the water, rendering it impossible to demonstrate a causal link between the water at Osborn and the incidence of H. Pylori infections among inmates at Osborn.

The Defendants have taken the position, and engaged their own experts to demonstrate, that the water at Osborn is regularly sampled by an independent licensed water operator and tested by independent laboratories. The historical testing results from 2013 through to the present day establishes that the water remains potable and drinkable and is not connected with any ailments experienced by any class members. The water is further treated by an air stripping system designed to remove any impurities prior to its entry into the facility.

With respect to the allegations of exposure to PCBs in the Q Buildings, the Consolidated Plaintiffs retained Dr. Lyle D. Burgoon, a toxicologist and biostatistician, to examine the records produced by the Defendants regarding the presence of PCBs in the caulking around windows and

13238506v1

doors and in the showers at Osborn, and to provide a risk assessment regarding exposures to inmates who were housed in the Q Buildings during the relevant period of time. While Dr. Burgoon provided his opinions regarding the likely exposure to excessive levels of PCBs, he could not opine on a direct causal link between such exposure and specific harm to each of the Q Buildings class members.

Again, the Defendants deny the allegations regarding exposure to excessive levels of PCBs and asbestos at Osborn and engaged their own experts to demonstrate that no unsafe exposures likely occurred in the Q Buildings. Defendants asserted the following: the Department of Construction Services as a division of the Connecticut Department of Administrative Services has for many years contracted with TRC Corporation to perform asbestos surveying and to develop an asbestos management plan at the Osborn Correctional Center in accordance with the United States Environmental Protection Agency's Asbestos Hazard Emergency Response Act ("AHERA"). TRC is a world-wide firm recognized as a leader in the construction, environmental health, safety management, regulatory and environmental compliance fields. TRC has regularly and consistently worked in compliance with, and in conjunction with, the EPA and the State of Connecticut Departments of Public Health ("DPH") and Department of Environmental Protection ("DEEP") to ensure that the Osborn Correctional Institution is being managed for asbestos and PCBs in compliance with both state and federal regulations. TRC worked with the Department of Correction to perform scheduled Asbestos Hazard Emergency Response Act ("AHERA") inspections for Osborn and to develop and implement asbestos management plans. TRC has regularly tested the air throughout Osborn during these engagements and there has been no evidence that asbestos fibers have been present in the air at Osborn. Asbestos fibers are microscopic and would not typically be visible. The air testing that TRC performed during numerous remediation projects confirms that asbestos fibers have not been present in the air at

Osborn.  In addition, prior to the class period, TRC performed testing for PCBs in November 2011 in the context of a planned renovation of the Q buildings at Osborn.  The only samples that tested over the EPA action level in the Q building were two areas of window glaze in the shower area. The material was in good shape, but it tested above the EPA level.  Prior to the class period, those window glazes were epoxy coated which encapsulated the PCBs as recognized by EPA and the CT DEEP.  Furthermore, prior to the class period, CT OSHA performed air testing to determine whether there was any evidence of PCBs in the air in the Q buildings.  The air testing did not detect the presence of PCBs.  The Q buildings were ultimately closed in 2016.  The defendants argued that they relied on TRC's expertise to advise and ensure that the Osborn Correctional Institution was being managed for asbestos and PCBs in compliance with both state and federal regulations.

Prior to commencement of trial in this matter, counsel requested that the case be referred to a magistrate for mediation and possible settlement.  The Court referred the case to Judge Robert M. Spector for mediation.  After the parties exchanged settlement offers and submitted *ex parte* mediation statements, Judge Spector held a full-day mediation with a representative group on behalf of the Consolidated Plaintiffs and with Defendants, as well as numerous telephone and Zoom calls with the parties and counsel. As a result of the extensive efforts of Judge Spector, the parties reached an agreement on the terms of a settlement, subject to this Court's approval and the Court's agreement to decertify the class and allow the settlement to proceed only as to each of the named Consolidated Plaintiffs. The settlement involves payments to each of the Consolidated Plaintiffs in exchange for general releases, which payments would not be offered or made to non-named class members.

The Consolidated Plaintiffs understand they are not required to prove actual physical injury to prevail in proving a constitutional violation based on the conditions of their confinement, *see Helling v. McKinney*, 509 U.S. 25, 33 (1993). Through the process of this case, the Consolidated

Plaintiffs understand further that, without evidence of actual harm and specific causation, the likely outcome if they are successful would be limited to non-monetary relief such as corrective measures to remedy the alleged conditions, and possibly, to nominal damages. More particularly, the Consolidated Plaintiffs recognize that, without expert testimony and evidence of direct and specific causation, either regarding harm caused by the water or exposure to PCBs (and possibly asbestos), none of them would be entitled to an award of more than nominal damages under the law, even if they succeeded at proving a constitutional violation. *See, e.g., Reynolds v. Arnone et al.,* 3:13-cv-1465 (SRU) (D. Conn. Jan. 10, 2023) (entering judgment on jury verdict for nominal damages in case involving claim of constitutional violation); *Steele v. Ayotte et al.*, 2018 WL 731796, at *5 (D. Conn. Feb. 6, 2018) (plaintiff suing under Section 1983 for constitutional violation based on conditions of confinement entitled to nominal damages for potential future harm).

In addition, with respect to non-monetary relief that the Consolidated Plaintiffs would seek in this case – namely, remedying the conditions that resulted in the filing of their claims – the Q Buildings were decommissioned and closed in December 2016. Further, the Department of Correction has confirmed that funding through a bond issue has been obtained specifically for purposes of replacing the exterior doors and windows throughout Osborn, eliminating any questions regarding the safety of exterior doors and windows. Contracts for the project, which will be managed by Gilbane Building Company, were executed in January 2023. True and correct copies of contract summaries, from the Department of Administrative Services website, www.portal.ct.gov/DAS/CTSource/ContractBoard, are appended hereto as Exhibits A, B and C. This project will inure to the benefit of all current and future inmates housed in Osborn. The Department of Correction continues to study ways to upgrade the water processing and filtration systems at Osborn which is anticipated to improve the quality of the water. This would inure to the benefit of all current and future inmates at Osborn.

13238506v1

Based on these developments, the Consolidated Plaintiffs have agreed, in lieu of proceeding to trial, to a fair and reasonable settlement for themselves with the Defendants that would compensate them for their time and effort in pursuing these claims. However, the settlement does not include the non-named class members and requires decertification of the class and subclass.

All of the above results in a significant change in circumstances warranting reconsideration of the class certification, particularly given (i) the agreement to make payments to only the named Consolidated Plaintiffs to settle the case, (ii) the causation and proof issues that would be faced at trial in seeking an award of compensatory damages other than nominal damages on behalf of all class members, and (iii) the facility upgrades at Osborn which are underway and will effectively eliminate the potentially hazardous conditions underlying the complaint in this case.

## ARGUMENT

A district court is required to monitor class proceedings and "reassess [its] class rulings as the case develops." *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999) (citation omitted). "Even after a [class] certification order is entered, the [district] judge remains free to modify it in the light of subsequent developments in the litigation." *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 72 L.Ed.2d 740 (1982). Accordingly, the Court "can always alter, or indeed revoke, class certification at any time before final judgment is entered should a change in circumstances" render a class action no longer appropriate. *J. S. v. Attica Cent. Sch.*, 2011 WL 4498369, at *4 (W.D.N.Y. Sept. 27, 2011) (quoting *Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104, n. 9 (2d Cir. 2007)).

"Like the initial decision whether to certify a class, the question of whether to decertify a class is committed to the discretion of the district court." *J.S. v. Attica Cent. Sch.*, 2011 WL 4498369, at *4–5. "In considering the appropriateness of decertification, the standard of review

is the same as a motion for class certification: whether the Rule 23 requirements are met." *Id.*, quoting *Marlo v. United Parcel Service, Inc.*, 251 F.R.D. 476, 479 (C.D. Cal. 2008); *see also East Maine Baptist Church v. Union Planters Bank, N.A.*, 244 F.R.D. 538, 541 (E.D. Mo. 2007) ("In considering a defendant's motion for decertification, the Court follows the legal standard required for class certification ... and focuses its inquiry as to whether or not the requirements of Rule 23 have been met.").

"[T]he four prerequisites of Rule 23(a) [are]: numerosity, commonality, typicality, and adequacy of representation." *Marisol A. v. Giuliani*, 126 F.3d 372, 375 (2d Cir.1997). In addition to meeting the standards in Rule 23(a), to continue as a class, the certified class "must also qualify under one of the three Rule 23(b) subdivisions." *Easterling v. Connecticut, Dep't of Correction*, 265 F.R.D. 45, 52 (D. Conn. 2010), *modified*, 278 F.R.D. 41 (D. Conn. 2011); *see also Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010).

In the early stages of this case, Consolidated Plaintiffs initially sought and qualified for class certification by meeting the requirements of Rule 23(a) and (b). Since the certification, however, as set forth above, the Consolidated Plaintiffs have more information and insight into their claims, proof issues, the limitations on monetary recoveries and projects underway at Osborn already that will directly impact the conditions underlying the claims in the complaint. The Defendants have offered to settle the claims with the Consolidated Plaintiffs with a monetary award in exchange for general releases. As such, proceeding as a class is no longer viable or warranted.

First, based on the proposed settlement terms, the Consolidated Plaintiffs can no longer adequately represent the members of the certified class and the sub-class. "Rule 23(a)(4) requires that 'the representative parties will fairly and adequately protect the interests of the class.' This generally requires plaintiffs to make a two-part showing:  first, that the lead plaintiffs' interests are

not 'antagonistic' to the other members' interests, and second, that the plaintiffs' attorneys are 'qualified, experienced and able to conduct the litigation.'" *Haddock v. Nationwide Fin. Servs., Inc.*, 262 F.R.D. 97, 117 (D. Conn. 2009), *vacated and remanded on other grounds sub nom. Nationwide Life Ins. Co. v. Haddock*, 460 F. App'x 26 (2d Cir. 2012). To satisfy Rule 23(a)(4), the named plaintiffs must "possess the same interest [s] and suffer the same injur[ies] as the class members." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)) (internal quotation marks omitted). "Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). "Not every conflict among subgroups of a class will prevent class certification—the conflict must be 'fundamental' to violate Rule 23(a)(4)." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011).

Applied here, as set forth above, even assuming the Consolidated Plaintiffs were to prevail in proving a constitutional violation, such a finding would entitle them and the class members to only nominal damages. *Reynolds v. Arnone et al.,* 3:13-cv-1465 (SRU); *Steele v. Ayotte et al.*, 2018 WL 731796, at *5. The Defendants have offered a settlement proposal to the Consolidated Plaintiffs that involves payment of sums that would not be recoverable or payable to the class members who are not named plaintiffs. The Consolidated Plaintiffs, collectively, have agreed to accept these payments in exchange for general releases. By doing so, when the non-named class members would not receive such sums, the Consolidated Plaintiffs are no longer in a position to fairly and adequately represent the class members.

Second, the non-monetary relief that the Consolidated Plaintiffs would seek if they prevailed – remediation of conditions at Osborn – has been addressed by the closing of the Q

buildings and is already being addressed separately by the Department of Corrections through the project to replace exterior doors and windows and studies to, in the future, improve the water system. The Consolidated Plaintiffs are now no longer in the best position to pursue non-monetary relief on behalf of all class members since the Department of Correction is already in the process of making renovations to accomplish the same results.

Third, this case no longer meets several of the required bases for certification. With respect to the commonality requirement, the class members must have "suffered the same injury" and "their claims ... depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Likewise, the typicality requirement mandates that the named plaintiffs' claims and interests are sufficiently interrelated that the class members would be fairly and adequately protected by allowing the matter to proceed as a certified class. *Steginsky v. Xcelera, Inc.*, 2015 WL 1036985, at *4 (D. Conn. Mar. 10, 2015), *aff'd,* 658 F. App'x 5 (2d Cir. 2016) (*quoting Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 (1982)). Further, under Rule 23(b)(2), claims for individualized monetary damages preclude class certification under Rule 23(b)(2). *Nationwide Life Ins. Co. v. Haddock*, 460 F. App'x 26, 29 (2d Cir. 2012) (citing *Wal-Mart,* 131 S. Ct. at 2557–60).

In this case, while the damages to which class members would be entitled – assuming Consolidated Plaintiffs were successful in proving a constitutional violation – would be nominal, to the extent individual class members are able to separately demonstrate direct and specific causation between the alleged conditions at Osborn and actual injury, those class members would be in a better position than the Consolidated Plaintiffs to individually assert claims and seek other damages commensurate with the degree of harm suffered. Accordingly, this case no longer meets the requirements of commonality, typicality and predominance under Rule 23(b)(3). To the extent individuals are able to demonstrate specific injury that cannot be proven through litigation as a

9

class action, decertification would allow those individuals to pursue their claims and not be bound by the nominal award to which the Consolidated Plaintiffs – if they prevailed – would be entitled to receive.

Finally, as set forth above, the amount of damages recoverable for the class as a whole, should the Consolidated Plaintiffs prevail, would be *de minimis* and would create significant and costly complications in attempting to make such minimum payments to potentially thousands of class members, many of whom have been released from custody and their whereabout are unknown. A number of courts have recognized that a *de minimis* recovery serves as grounds for decertifying a class once certification has occurred. *See, e.g., Fainbrun v. Sw. Credit Sys., L.P.*, 2008 WL 750550, at *1 (E.D.N.Y. Mar. 18, 2008); *Leyse v. Corporate Collection Serivces, Inc.*, 2006 WL 2708451, *9 at n. 5 (S.D.N.Y. Sept. 18, 2006); *see also Jones v. CBE Group, Inc.*, 215 F.R.D. 558, 570 (D. Minn. 2003); *Gradisher v. Check Enforcement Unit, Inc.*, 209 F.R.D. 392, 393 (W.D. Mich.2002); *Daenzer v. Wayland Ford, Inc.*, 210 F.R.D. 202, 205 (W.D. Mich. 2002); *Lyles v. Rosenfeld Attorney Network*, 2000 WL 798824, *7 (N.D. Miss. May 17, 2000).

For the foregoing reasons, the Consolidated Plaintiffs can no longer effectively represent class and subclass members and respectfully request that the Court decertify both the class and the subclass.

WHEREFORE, Consolidated Plaintiffs and Defendants respectfully and jointly request that the Court grant this motion and grant such other and further relief as the Court deems just and proper.

13238506v1

December 11, 2023                                Respectfully submitted,
Hartford, CT


CONSOLIDATED PLAINTIFFS                          DEFENDANTS SCOTT SEMPLE ET AL.


By: /s/ *Lorey Rives Leddy*                      By:  /s/ *Steven M. Barry*
Lorey Rives Leddy (ct# 19297)                    Steven M. Barry (ct#07825)
MURTHA CULLINA LLP                               Assistant Attorney General
280 Trumbull Street 12th Floor                   110 Sherman Street
Hartford, CT 06103                               Hartford, CT 06105
Tel: (203) 653-5400                              Tel: (860) 808-5450
Fax: (203) 653-5444                              Fax: (860) 808-5591
lleddy@murthalaw.com                             steven.barry@ct.gov

13238506v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 11, 2023, a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing].  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing].  Parties may access this filing through the Court's system.

Steven M. Barry, Esq.
Office of the Attorney General
110 Sherman Street
Hartford, CT 06105
steven.barry@ct.gov

/s/ *Lorey Rives Leddy*
Lorey Rives Leddy (ct#19297)

13238506v1

# *Exhibit A*

## *Contract Summary*

### General Information

| | |
|---|---|
| **Contract Number** | 19DAS3037AA |
| **Issue Date** | October 09, 2018 |
| **Organization** | DAS Construction Services |
| **Status** | Active |
| **Multi Contractor Contract** | No |
| **Title** | BI-JA-485-ARC |
| **Description** | Exterior Door and Window Replacement, Osborn Correctional Facility, Somers, CT |
| **Contract Administrator** | Randy Daigle |
| **Email Address** | randy.daigle@ct.gov |
| **Request Number** | |
| **Solicitation Number** | |
| **Enable Contract as Round Trip** | No |
| **P-Card Accepted** | No |
| **PO Dispatch** | Do Not Dispatch |

### Commodity

| Code | Description |
|---|---|
| 94000000 | Organizations and Clubs |

### Contractor

**Name**    Hoffmann Architects, Inc.

| Contact Type | Contact Name | Contact Email | Contact Phone |
|---|---|---|---|
| Main Contact | Robert Delagrange | | 2032396660 |

### Distributors

Hoffmann Architects, Inc.

### Supplier Diversity Information

| Name | Diversity | Allocation |
|---|---|---|

## Pricing Information

| | |
|---|---|
| **Contract Type** | Migrated DAS-CS Consultant Contract |
| **Pricing Type** | Fixed Price |
| **Total Value Condition** | Fixed |
| **Total Value(USD)** | 3,590,000.00 |
| **Retainage Percent** | 0.00 |
| **Retainage Notes** | Not tracked in this system |
| **Initial Expended Value(USD)** | 0.00 |
| **Cumulative Encumbered/Expended Value(USD)** | 0.00 |
| **Total Paid(USD)** | 0.00 |
| **Remaining Balance(USD)** | 3,590,000.00 |
| **Value to Go(%)** | 100.00 |
| **Payment Terms** | Net 45 Days |
| **Payment Notes** | |
| **Delivery Terms** | N/A: Not Applicable |
| **Delivery Notes** | Hoffmann Architects, Inc. |
| **Other Notes** | |

## Contract Period

| | |
|---|---|
| **Award Date** | June 19, 2019 |
| **Effective Date** | June 19, 2019 |
| **Expiration Date** | October 27, 2026 |
| **Potential Final Expiration Date** | October 27, 2026 |

## Contract Clauses

No Clause(s) found

## Catalog Names

No catalog(s) found

## Document(s)

| Document Name | Upload Date |
|---|---|
| BI-JA-485-ARC Fully Executed.pdf | July 09, 2020 |

## Administrative Document(s)

No Documents Found

## Authorization

DAS Construction Services

*Exhibit B*

## *Contract Summary*

### General Information

| | |
|---|---|
| **Contract Number** | 23DAS3000AA |
| **Issue Date** | January 23, 2023 |
| **Organization** | DAS Construction Services |
| **Status** | Active |
| **Multi Contractor Contract** | No |
| **Title** | BI-JA-485-CMR |
| **Description** | Exterior Door and Window Replacement, Osborn Correctional Facility, 335 Bilton Road, Somers, CT 06071. NOTE: This CMR Contract is reserved for use ONLY by the Construction Services unit of the Connecticut Department of Administrative Services. |
| **Contract Administrator** | Randy Daigle |
| **Email Address** | randy.daigle@ct.gov |
| **Request Number** | |
| **Solicitation Number** | BIJA485CMRRFP |
| **Enable Contract as Round Trip** | No |
| **P-Card Accepted** | No |
| **PO Dispatch** | Do Not Dispatch |

### Commodity

| Code | Description |
|---|---|
| 72000000 | Building and Facility Construction and Maintenance Services |

### Contractor

| Name | Gilbane Building Company | | |
|---|---|---|---|
| **Contact Type** | **Contact Name** | **Contact Email** | **Contact Phone** |
| Main Contact | Stephen Metcalf | | 8603685106 |

### Distributors

Gilbane Building Company

### Supplier Diversity Information

| Name | Diversity | Allocation |
|---|---|---|

## Pricing Information

| | |
|---|---|
| **Contract Type** | DAS-CS CMR Contract |
| **Pricing Type** | Fixed Price |
| **Total Value Condition** | Fixed |
| **Total Value(USD)** | 59,084,015.00 |
| **Retainage Percent** | 0.00 |
| **Retainage Notes** | |
| **Initial Expended Value(USD)** | 0.00 |
| **Cumulative Encumbered/Expended Value(USD)** | 0.00 |
| **Total Paid(USD)** | 0.00 |
| **Remaining Balance(USD)** | 59,084,015.00 |
| **Value to Go(%)** | 100.00 |
| **Payment Terms** | Net 45 Days |
| **Payment Notes** | |
| **Delivery Terms** | N/A: Not Applicable |
| **Delivery Notes** | |
| **Other Notes** | |

## Contract Period

| | |
|---|---|
| **Award Date** | January 25, 2023 |
| **Effective Date** | January 25, 2023 |
| **Amendment Effective Date** | September 22, 2023 |
| **Expiration Date** | October 27, 2026 |
| **Potential Final Expiration Date** | October 27, 2026 |

## Contract Clauses

No Clause(s) found

## Catalog Names

No catalog(s) found

## Document(s)

| Document Name | Upload Date |
|---|---|
| BI-JA-485-CMR Fully Executed.pdf | March 14, 2023 |

## Administrative Document(s)

No Documents Found

## Authorization

DAS Construction Services

# *Exhibit C*

## *Contract Summary*

### General Information

| | |
|---|---|
| **Contract Number** | 20DAS3026AA |
| **Issue Date** | January 10, 2019 |
| **Organization** | DAS Construction Services |
| **Status** | Active |
| **Multi Contractor Contract** | No |
| **Title** | BI-JA-485-CA |
| **Description** | Exterior Door and Window Replacement, Osborn Correctional Facility, Somers, CT |
| **Contract Administrator** | Randy Daigle |
| **Email Address** | randy.daigle@ct.gov |
| **Request Number** | |
| **Solicitation Number** | |
| **Enable Contract as Round Trip** | No |
| **P-Card Accepted** | No |
| **PO Dispatch** | Do Not Dispatch |

### Commodity

| Code | Description |
|---|---|
| 94000000 | Organizations and Clubs |

### Contractor

| Name | Hill International.com | | |
|---|---|---|---|
| **Contact Type** | **Contact Name** | **Contact Email** | **Contact Phone** |
| Main Contact | Mellanie Bennett-Monclova | mellaniebennett-monclova@hillintl.com | 212-244-3700 |

### Distributors

Hill International.com

### Supplier Diversity Information

| Name | Diversity | Allocation |
|---|---|---|

## Pricing Information

| | |
|---|---|
| **Contract Type** | Migrated DAS-CS Consultant Contract |
| **Pricing Type** | Fixed Price |
| **Total Value Condition** | Fixed |
| **Total Value(USD)** | 1,806,264.00 |
| **Retainage Percent** | 0.00 |
| **Retainage Notes** | Not tracked in this system |
| **Initial Expended Value(USD)** | 0.00 |
| **Cumulative Encumbered/Expended Value(USD)** | 0.00 |
| **Total Paid(USD)** | 0.00 |
| **Remaining Balance(USD)** | 1,806,264.00 |
| **Value to Go(%)** | 100.00 |
| **Payment Terms** | Net 45 Days |
| **Payment Notes** | |
| **Delivery Terms** | N/A: Not Applicable |
| **Delivery Notes** | Hill International, Inc. |
| **Other Notes** | |

## Contract Period

| | |
|---|---|
| **Award Date** | March 23, 2020 |
| **Effective Date** | March 23, 2020 |
| **Expiration Date** | October 27, 2026 |
| **Potential Final Expiration Date** | October 27, 2026 |

## Contract Clauses

No Clause(s) found

## Catalog Names

No catalog(s) found

## Document(s)

| Document Name | Upload Date |
|---|---|
| BI-JA-485-CA Fully Executed.pdf | July 09, 2020 |

## Administrative Document(s)

No Documents Found

## Authorization

DAS Construction Services